DAVID C. CARLETON, Respondent, *v.* THOMAS DARCY, et al. Appellants.

In an action to recover possession of a lot in the city of New York plaintiff rested upon proof of his possession from September, 1875, to June, 1876, when defendant D. entered under a lease from the city. It appeared that proceedings were instituted under the act of 1839 (Chap. 246, Laws of 1839), authorizing the city corporation to acquire title to a tract of land including the lot in question, under which the city claimed title. The common council by resolution passed in March, 1842, directed the buildings on the tract to be sold; by resolution passed in April, 1843, a lease was authorized of a market building on the tract, and the lessee occupied for some time. In 1859 by direction of the common council the market building was removed, and in 1863 by similar direction the tract was thrown open to the public, and from that time to 1867 was inclosed and maintained as a public park. In October, 1867, the city offered the lots in the tract for sale, and all except the one in question and two others were sold; after that the tract was used as a public common until plaintiff inclosed with a fence and took possession of the lot in question. *Held,* that while plaintiff made out a *prima facie* case by showing possession before the entry of D., this was met and overcome by proof of prior possession in the city; and that even assuming the city failed to establish a title under said proceedings, it was entitled to judgment.

The action was originally commenced against D. Upon application of the city corporation, it was made a party and allowed to answer. Plaintiff claimed this was error, as the lease to D. was not formally executed. *Held* untenable; that as the relation of landlord and tenant was recognized by both parties to the lease plaintiff was not in a position to question it.

*Carleton* v. *Darcy* (14 J. & S. 484), reversed.

(Argued December 6, 1882 ; decided December 15, 1882.)

APPEAL from judgment of the Superior Court of the city of New York, in favor of plaintiff, entered upon an order made December 6, 1880, which directed judgment on a verdict. (Reported below, 14 J. & S. 484.)

This action was ejectment, originally brought by the plaintiff against the defendant Darcy, to recover possession of a lot of land in the twelfth ward of the city of New York, on the north side of One Hundred and Twentieth street, twenty by one hundred feet, the easterly side of the lot being one hun-

dred feet west from Third avenue. Darcy claimed to be lessee of the city, and the corporation, upon its application, was joined as defendant, and had leave to answer. The plaintiff, in June, 1876, was in actual possession of the lot in question, and had been at least since the September preceding, having at that time inclosed, with a substantial board fence, this lot, together with all the others composing the square bounded by One Hundred and Twentieth street, Third avenue, One Hundred and Twenty-first street and Sylvan place, except a small plot in the south-east portion of the square. While the plaintiff was so in possession, the defendant Darcy, in June, 1876, entered upon the land under a lease from the city. The plaintiff rested upon proof of his possession, without proving any paper or other title to the premises. The court, at the close of the case, directed a verdict for the plaintiff, subject to the opinion of the court at General Term. The following facts appeared in respect to the title of the defendant, and were in substance found by the General Term: By chapter 246, Laws of 1839, the mayor, aldermen and commonalty of the city of New York were authorized to acquire the fee to a block of land in the twelfth ward of the city, described in the act, in the same manner and with the like proceedings as are prescribed in "An act to vest certain lands, tenements and hereditaments in the mayor, aldermen and commonalty of the city of New York," passed April 12, 1834, in relation to lands described in that act. The counsel for the corporation put in evidence certain papers entitled "In the matter of the application of the mayor, etc., of the city of New York to take certain lands in the twelfth ward of said city," as follows: *First*, The written oath of three persons, describing themselves as commissioners of estimate "in the above-entitled matter," in the form prescribed by the third section of the act of April 12, 1834, purporting to have been subscribed and sworn to July 11 and 17, 1839, and which oath was afterwards filed in the clerk's office. *Second*, Notice of the deposit of a copy of the estimate of the commissioners in the clerk's office of the city for inspection, and for the presentation of objections, and

that the report of the commissioners would be presented to the Supreme Court, at the Capitol in the city of Albany, on the first Tuesday of September, 1839, which notice was signed by the commissioners, and was dated August 19, 1839. *Third*, An order of the Supreme Court, made on the 31st of September, 1839, confirming the report of the commissioners of estimate. The order recites the reading and filing of the report dated August 19, 1839, and of an additional report, dated August 31, 1839, both of which are set out at length in the order of confirmation. It was also proved that the notice of the filing of a copy of the estimate of the commissioners in the clerk's office, and for the presentation of objections, and for an application to the court, was published for ten days successively in two newspapers in the city of New York, commencing August 19, 1869. It was not shown that any application was made by the corporation to the court for the appointment of commissioners of estimate, nor was an order of appointment shown. The lot in question was a parcel of the tract claimed to have been so acquired by the city under the act of 1839. By resolution, approved May 4, 1840, the common council authorized the superintendent of buildings to advertise for the erection of a market on the tract, and appropriated money therefor; but it does not appear that any proceedings were taken under this resolution. By resolution approved March 3, 1842, the common council directed the superintendent of repairs to sell all the dwelling-houses and other buildings on the tract, except one used as a market-house. By resolution, approved April 15, 1843, the common council authorized a lease of the market building to be made to one Hardenbrook, who thereafter occupied it for some time. In 1859 the market building was removed by direction of the common council. By resolution, approved September 5, 1863, the common council directed the street commissioner to have the tract thrown open to the public, and benches and seats placed therein for the benefit of those who might visit there, and from 1863 to 1867, inclusive, the tract was maintained as a public park. The park was inclosed by a picket fence, with

gates, and had walks, trees, shrubbery and benches, and keepers were appointed, who were paid from the city treasury. The city, in October, 1867, offered the lots in the tract for sale at public auction, and all the lots, except the lots in question and two others, were sold. It does not appear that deeds were given for, or possession taken of the lots sold. After 1867 the fences disappeared, and the tract appears to have been used as a common. Public meetings were held there, workmen resorted there with carts and horses to take their noon-day meals and rest, and " everybody went into and over it as they pleased until the plaintiff inclosed it."

*Samuel Hand* for appellants. The presumption is that the land was taken for public purposes, although neither the act of 1839 nor the report of the commissioners say any thing on this subject, nor what it was to be used for. (Mills' Law of Eminent Domain, §§ 10, 11; *People, ex rel. Murphy,* v. *Kelly,* 76 N. Y. 475–489.) The confirmation of the report of the commissioners (in a proceeding to take private property for public use as a street) is a judgment, and conclusive as to all questions litigated or which might have been litigated therein. (*Dolan* v. *The Mayor,* 62 N. Y. 472; *Matter of Arnold,* 60 id. 26–28; *Embury* v. *Conner,* 3 id. 511–522, 523.) The very fact that it was a municipal corporation that was authorized to acquire and take the land makes such taking and acquisition for the purposes of the corporation a taking for public use. (Dillon on Municipal Corporations [2d ed.], § 64; *City of Chicago* v. *Halsey,* 25 Ill. 595; *Merwin* v. *The City of Chicago,* 45 id. 133; *Darlington* v. *The Mayor,* 31 N. Y. 164–197; *Borough of Henderson* v. *Bd. of County Comm'rs of the County of Sibley,* 11 Northwestern Reporter, 91; 2 Hoffman's Laws of the city and county of New York, chap. 75, p. 752.) The confirmation by the Supreme Court of the report of the commissioners is a judgment, and conclusive as to all questions which might have been litigated therein. (*Embury* v. *Conner,* 3 N. Y. 511; *Matter of Arnold,* 60 id. 26–28; *Dolan* v. *The Mayor,* 62 id. 472–5.) The defendant, the mayor, etc., having shown a per-

fect title in fee and undisputed possession down to 1869, the other defendant, Darcy, can stand on their title. (2 Greenleaf's Evidence [13th ed.], § 331; *Sweet* v. *B., N. Y. & P. R'way Co.,* 79 N. Y. 293–297; *Edwards* v. *Clemnons,* 24 Wend. 480; *Schuyler* v. *Leggett,* 2 Cow. 660; 3 R. S. [6th ed.] 576, §§ 32 [36]; Code of Civil Procedure, § 1524.) The occupation by plaintiff at the time he claims to have been ousted by Darcy is deemed to have been under and in subordination to the title of the mayor, etc., and to recover he should have shown a better title, either by decree of court or by deed, will or descent, or at the very least an occupation for twenty years under claim of title. (Code of Civil Procedure, § 368; *Wood* v. *Squires,* 1 Hun, 481; *Stevens* v. *Hauser,* 39 N. Y. 302.) Plaintiff's possession which dates only from 1873, three years before the commencement of this action, was not enough whereon to found a presumption of or create an adverse title. (Code of Civil Procedure, § 368.) A prior possession under claim of right, not voluntarily abandoned, will prevail over a subsequent possession of less then twenty years. (*Smith* v. *Lorillard,* 10 Johns. 338; *Jackson* v. *Rightmeyre,* 16 id. 325; *Jackson* v. *Dunn,* 5 Cow. 200; *Whitney* v. *Wright,* 15 Wend. 171; Tyler on Ejectment, 72, 73.) If the land was impressed with a trust in the hands ·of the city to be kept forever as a market or park, then it could not abandon it, or its possession of it, and no length of time would run in favor of such abandonment. (*St. Vincent Asylum* v. *Troy,* 76 N. Y. 108; *Armstrong* v. *B'klyn Park,* 45 id. 234.) The recitals of the application and the appointment of commissioners in the adjudication of the Supreme Court, adjudging the condemnation, were binding and cannot be disputed by this stranger. (*McCarthy* v. *Marsh,* 1 Seld. 263; *Bustand* v. *Gates,* 4 Dana [Ky.], 429; *Porter* v. *Purdy,* 29 N. Y. 106; *Searle* v. *Galbraith,* 73 Ill. 269; *Lathrop* v. *Am. Co.,* 41 Iowa, 547; *Mylar* v. *Hughes,* 60 Mo. 105; *Secombe* v. *Railway Co.,* 23 Wall. 118; *Seely* v. *Reid,* 3 Iowa, 374; *Galena R. R. Co.* v. *Pound,* 22 Ill. 399; *Wellington, Petitioners, etc.,* 16 Pick. 87; *Bragg* v. *Sorid,* 1 Wood's C. C. and R. 209; *Heyward* v. *The Mayor,* 7 N. Y. 314; *De Varaigne*

v. *Fox*, 2 Blatchf. C. C. 95 ; *Rexford* v. *Knight*, 11· N. Y.
308; *Sweet* v. *B.*, *N. Y. & P. R. R.*, 79 id. 294 ; *Dingley* v.
*Boston*, 100 Mass. 544.)

*H. B. Philbrook* for respondent.   The plaintiff, Carleton,
having been in possession of the premises at the time of his dis-
possession by Darcy, this is *prima facie* evidence that Carleton
had the fee in these premises.  (*Day* v. *Alverson*, 9 Wend.
233 ; *Smith* v. *Lorillard*, 10 Johns. 338, 356 ; *Griffin* v. *Spen-
cer*, 6 Hill, 525 ; 2 Greenl. on Ev., § 618; *Whitney* v. *Wright*,
15 Wend. 171 ; *Christy* v. *Scott*, 14 How. 282, 292 ; New
Code, § 372; Code of Procedure, § 85 ; 2 R. S. 294, § 84;
*Whiting* v. *B. R. Ins. Co.*, 72 N. Y. 117; *Hermann* v.
*Merchs'. Ins. Co.*, 8 W'kly Dig. 19 ; *Williams* v. *Ins. Co. of
N. America*, 1 Hilt. 345, 350 ; *Porter* v. *Lobach*, 2 Bosw.
188 ; *Cahill* v. *Austin*, 8 W'kly Dig. 436 ; *Winchell* v. *Hicks*,
18 N. Y. 558 ; *Durant* v. *Abendroth*, 69 id. 148 ; *Oneida Bk.*
v. *Ontario Bk.*, 21 id. 490 ; *McCall* v. *Sun Mut. Ins. Co.*, 66
id. 517; *Frantz* v. *Ireland*, 66 Barb. 386.)   No defense is es-
tablished unless it is shown that Darcy had a title or right to
possession at the time he entered, and no such title or right is
shown.   (2 R. S. 242, § 17 [Edm. ed., 355]); *Godfrey* v. *Town-
send*, 8 How. Pr. 402; *Jackson* v. *Stiles*, 6 Cow. 594; *People*
v. *Webster*, 10 Wend. 554 ; *Brooklyn Park Comm'rs* v. *Arm-
strong*, 45 N. Y. 234; *Matter of B. & A. R. R. Co.*, 53 id.
576; *St. Vincent Asylum* v. *City of Troy*, 76 id. 108 ; *Mat-
ter of N. Y. & B. R. R. Co.*, 9 W'kly Dig. 387 ; *Clark* v.
*Courtney*, 5 Peters, 319 ; *Kirsted* v. *O. & A. R. R. Co.*, 69
N. Y. 343 ; *Orchard* v. *Binninger*, 51 id. 652; *Sherman* v.
*N. Y. C. R. R. Co.*, 22 Barb. 269 ; *Combs Case*, 9 Co. R. 75 ;
*Isham* v. *B. Iron Co.*, 19 Vt. 230.)   Darcy cannot avail him-
self of any title that the mayor, aldermen and commonalty
may have.  (*Christy* v. *Scott*, 14 How. 282; *Jackson* v. *Har-
dee*,·4 Johns. 202; *Taylor* v. *Beebe*, 3 Robt. 262 ; ·*In re Carl-
ton St.*, 16 Hun, 497.)   Private property cannot be taken at
all except for public use.  (*Taylor* v. *Porter*, 4 Hilt. 140 ; *Pow-
ers* v. *Bergen*, 6 N. Y. 358 ; *Buffalo & N. Y. R. R.* v.

*Brainard,* 9 id. 108 ; *Powers* v. *Bergen,* 6 id. 358 ; *Hayward* v. *The Mayor,* 7 id. 314.) The decree of the Supreme Court on which the city relies for its title is invalid. The court had no jurisdiction to make it. (2 Cow. & Hill's Notes, 946 ; *Morse* v. *Williamson,* 35 Barb. 472 ; *Striker* v. *Kelly,* 7 Hill, 9 ; 2 Denio, 323 ; *Staples* v. *Fairchild,* 3 N. Y. 41 ; *Brown* v. *The Mayor,* 3 Hun, 685 ; *Matter of Marsh,* 71 N. Y. 315 ; *Bolton* v. *Jacks,* 6 Robt. 198 ; *Ferguson* · v. *Crawford,* 70 N. Y. 253 ; *Sharp* v. *Speir,* 4 Hill, 76 ; *Matter of Valentine,* 72 N. Y. 184 ; *Town of Willisborough* v. *N. Y. C R. R. Co.,* 76 id. 182 ; *Stanton* v. *Ellis,* 12 id. 575, 579 ; *The People* v. *Sutherland,* 8 W'kly Dig. 3 ; *In re Carlton St.,* 9 id. 164 ; *In re Burmeister,* 76 N. Y. 174 ; *Thompson* v. *Comm'rs, etc.,* 21 Alb. L. J. 15, 16.) Title in or possession by the parties who are named in the report of the commissioners as owners of the land must be proved before any foundation is laid for the title that the city claims under and through them. (*Kennedy* v. *Bogert,* 7 S. & R. 97.) The city acquired no title by adverse possession. (2 R. S. 294 [Edm. ed. 305], § 82 ; 3 Wash. on Real Estate, 123 [489.] ) There was no such occupancy as constituted an adverse possession. (Code of Civ. Pro., §§ 369, 370, 372 ; Code of Pro., §§ 82, 83, 85 ; 2 R. S. 294 ; *Anderson* v. *L. & N. Y. R. R. Co.,* 9 How. Pr. 553 ; *De Witt* v. *Vil. of Ithaca,* 7 W'kly Dig. 533 ; *Jackson* v. *Hathaway,* 15 Johns. 447 ; *Van Amringe* v. *Burnett,* 8 Bosw. 357 ; *People* v. *Kerr,* 27 N. Y. 188 ; *Redfield* v. *U. & S. R. R. Co.,* 25 Barb. 54 ; *Prentice* v. *Geizer,* 74 N. Y. 341 ; 2 Wash. on Real Estate, 308 ; Wash. on Easements, 185–6.) If the city ever had possession of the lot in question, it abandoned that possession and, therefore, cannot rely upon it. (Wash. on Easements, chap. 5, § 5, subd. 9, p. 667 [548] ; 3 Kent's Com. 450 ; *Cartwright* v. *Maplesden,* 53 N. Y. 622 ; *Corning* v. *Gould,* 16 Wend. 531 ; *Whitney* v. *Wright,* 15 id. 171.)

ANDREWS, Ch. J. The defendants were entitled to judgment upon the facts found by the General Term. The plaint-

iff, Carleton, having been in possession of the premises at the time of his dispossession by Darcy in June, 1876, established *prima facie*, his right to recover. It is well settled that a prior possession is sufficient to entitle a party to recover in an action of ejectment against a mere intruder or wrong-doer, or a person subsequently entering without lawful right, and when such prior possession is shown by the plaintiff, the defendant is put to his defense, and must establish a better right than that of the plaintiff. The plaintiff showed no paper or documentary title to the premises. His possession commenced by an entry upon the land in the fall of 1875, and there is no evidence of any right or title in him except such as is afforded by such entry and his subsequent possession. It was shown that the defendant Darcy entered upon the lot in question in June, 1876, under a lease purporting to be from the mayor, aldermen and commonalty of the city of New York, acting by the commissioners of the sinking fund, but executed by Andrew H. Green as comptroller of the city, under his seal.

The city was properly allowed to come in and defend the action. It was no objection that the lease was not formally executed by the commissioners of the sinking fund, pursuant to section 102 of the charter of 1873. The relation of landlord and tenant between the city and Darcy was recognized by both parties, and although the lease was not formally correct in respect to the manner of execution, the plaintiff is not in a position to question the existence of that relation between the defendants. Whether the city could be made liable upon the covenants in the lease, in an action by the lessee, is not a material question. The possession of Darcy for the purposes of this action, was the possession of the city. The material question is, whether the city established a prior possession to that of the plaintiff to the premises in question. If it did, and such possession was not voluntarily abandoned, it could have maintained an action against the plaintiff to recover the premises prior to his dispossession, for the reason that upon such prior possession being shown, the presumption of title in the plaintiff would be shifted and would attach to the prior possession of

the defendant. (*Smith* v. *Lorillard*, 10 Johns. 338.) Assuming that the city failed to establish a legal title to the lot in question, by the proceedings taken under chapter 246 of the Laws of 1839, on the ground either that that law was unconstitutional, as is claimed by the plaintiff, or because it failed to show all the steps requisite to be taken for the condemnation of the land, the fee of which it was authorized to acquire by that act, it is nevertheless clearly established that the city was in possession of the lot in question, claiming title under those proceedings, from 1840 or thereabouts, to the time of the plaintiff's entry in the fall of 1875.

The order of the Supreme Court confirming the report of the commissioners of estimate, made on the 3d day of September, 1839, together with such other proceedings as were proved to have been taken for the condemnation of the land mentioned in the act of 1839, in connection with the subsequent acts of ownership exercised by the corporation in respect to the property embraced in the report, leave no room to question the fact that the city claimed to have acquired the title under those proceedings. The lease of the market-house to Hardenbrook in 1843, the removal of the market building by the city in 1859, the throwing open of the tract by the common council for a public park in 1863, and inclosing it with a fence, and making walks, and placing therein seats and benches for the accommodation of the public, the continuous use of the tract as a park until the auction sale in 1867, the offering of the lots by the city for sale at that time, and the subsequent use of the unoccupied part of the land for public meetings, and as a public common, were acts and conduct which can only be accounted for upon the assumption of a possession of the tract by the city under a claim of title. Nor is there any evidence that the city abandoned possession of the premises prior to the entry by the plaintiff. It retained such possession and exercised such control as a municipal corporation ordinarily retains and exercises over lands used for public parks or grounds, and the lease granted by the city to Darcy, and under which he entered, was executed within a few months after the entry by

the plaintiff. The general statement in the case that the plaintiff was in actual possession of the land from November, 1873, is not consistent with the other special findings, because it is found that after the sale in 1867, and the disappearance of the fence which had previously inclosed the tract, the workmen in the neighborhood went thereon with their horses and carts to take their noon-day meals and rest, and the public went upon and over the land as they pleased, "until the plaintiff inclosed it in September, 1875." If the city could have maintained ejectment against the plaintiff after his entry, by force of its prior possession, *a fortiori*, can it defend its possession, subsequently acquired, against the claim of the plaintiff, whose only right, so far as the case shows, rests upon the presumption of title from his possession, commencing in September, 1875.

For these reasons the judgment of the General Term should be reversed, and judgment dismissing the complaint entered for the defendant.

All concur, except Tracy, J., absent.

Judgment accordingly.