THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent, *v.* DAVID C. CARLETON, Appellant.

SAME, Respondent, *v.* SAME, Appellant.

In an action of ejectment these facts appeared: Pursuant to an application on behalf of plaintiff an act was passed in 1839 (Chap. 246, Laws of 1839), authorizing it to acquire title by condemnation proceedings to land of which that in question is a part.  Commissioners of estimate and assessment, purporting to have been appointed in proceedings under the act, made reports therein which were confirmed by the Supreme Court.  The city paid the amounts awarded to the owners and immediately took possession of the lands.  Pursuant to resolution of the common council a market was erected thereon.  In 1842 that body, by resolution, directed a sale of all the other buildings on the land except the market-house.

In 1843 a substantial fence was built by the city, inclosing all the land, and thereafter, for about twenty years, it leased the market-house. It also, in 1847 and 1849, erected engine-houses on the land. The land remained so inclosed and occupied until about 1860, when, pursuant to resolutions of the common council, the buildings were removed, and in 1863 it was thrown open to the public as a park, and was so used down to 1866 or 1867, during all of which time there was a substantial fence around it. In 1867 the land was put up for sale in lots at auction by the commissioners of the sinking fund. The purchasers of some of the lots took title and erected buildings thereon, other purchasers refused to take title and litigations resulted; the lots bid off by them, for five or six years thereafter, were neglected, the fences decayed and the lots were left open to intruders. Defendant and others went into possession of the premises in question in 1873 as mere intruders; he took several deeds from the others; the possession of none of them antedated 1873. In 1871 a committee of the commissioners of the sinking fund, charged with the duty of estimating the value of the real estate belonging to the city, included said premises in their report. This action was commenced in 1878. *Held*, that, without regard to the validity of the condemnation proceedings, as against defendant the city's prior possession authorized a recovery; that there was no such abandonment by it as lost to it the benefit of such prior possession; also, that it had acquired title by adverse possession.

Possession of land, *animo dominendi*, is *prima facie* evidence of title, sufficient as against all persons who cannot show a prior possession or a better title.

The benefit of such a possession is not lost to the possessor if he leaves the land temporarily vacant, *animo revertendi*.

A city, as well as an individual, may obtain title by adverse possession.

(Argued March 20, 1889; decided April 16, 1889.)

APPEALS from judgments of the General Term of the Superior Court of the city of New York, entered upon orders made December 15, 1886, which affirmed judgments in favor of plaintiff, entered upon verdicts directed by the trial court.

The nature of the action and the material facts are stated in the opinion.

*D. P. Hays* for appellant. In ejectment the plaintiff must recover on the strength of his own title, and if he has none, the question of the defendant's title is unimportant. (*Sweet v. B., N. Y. & P. R. Co.*, 79 N. Y. 297; *Hills* v. *Draper*,

10 Barb. 458.)    If the city has title to its streets, ancient or modern, it is only a title in trust to hold the ground and keep it open as streets for the use of the public.    (*People* v. *Kerr*, 27 N. Y. 188, 197 ; *Matter of Gilbert El. R. Co.*, 38 Hun, 437, 448, 452, 453 ; *Bartow* v. *Draper*, 5 Duer, 154 : *Lahr* v. *Met. El. R. Co.*, 104 N. Y. 289, 290, 291.)    As to the condemnation proceedings, they were, if they were anything, special statutory proceedings to take private property from its owners *in invitum* by an exercise of the right of eminent domain ; and to acquire title thereby, the plaintiffs were bound to prove that the requirements and prescriptions of the statute were strictly pursued.    (*Dyckman* v. *City of N. Y.*, 5 N. Y. 439, 440 ; Lewis on Eminent Domain, § 253 ; *Atkins* v. *Kinnan*, 20 Wend. 249 ; *Sharp* v. *Speir*, 4 Hill, 76, 88 ; *Merritt* v. *Village of Portchester*, 71 N. Y. 312 ; *In re City of Buffalo*, 78 id. 366 ; *Cleveland* v. *Boerum*, 27 Barb. 252, 254 ; 24 N. Y. 613 ; *Adams* v. *S. & W. R. R. Co.*, 10 id. 330 ; *Striker* v. *Kelly*, 2 Denio, 330 ; *Stewart* v. *Wallis*, 30 Barb. 348 ; 1 Greenleaf on Evidence, § 500.)    When courts of general jurisdiction act in the exercise of special statutory powers, their proceedings stand on the same footing as those of courts of limited and inferior jurisdiction.    (3 N. Y. 511 ; *Ferguson* v. *Crawford*, 70 id. 259, 260 ; *Embury* v. *Connor*, 3 id. 523.)    In special statutory proceedings the record is the primary evidence and is *prima facie*, but not conclusive, evidence of the jurisdictional facts recited in it.    (Abbott's Trial Ev. 546, 701, 702, 714 ; *Bolton* v. *Jacks*, 6 Robt: 198 ; *Ferguson* v. *Crawford*, 70 N. Y. 267 ; *People ex rel. Frey* v. *Warden*, 100 id. 25, 26 ; *Harper* v. *Rowe*, 7 Rep. 174 ; 1 Greenl. on Evidence, § 511 ; *Matter of Arnold*, 60 N. Y. 26, 28 ; *Dolan* v. *Mayor, etc.*, 62 id. 472 ; *Embury* v. *Connor*, 3 id. 511, 522, 523.) The plaintiff should not rely upon presumptions where it was his duty to produce proof.    (*Jackson* v. *Rice*, 3 Wend. 180–184.)    Presumption does not supply the lack of proof. (*People* v. *Gates*, 56 N. Y. 386.)    The act (chap. 246 of the Laws of 1839) which authorized the respondent to acquire title to a portion of the premises in question, was unconstitu-

tional, as it provided for the taking of property for other than a public use. (Const. 1821, art. 7, § 7; Lewis on Eminent Domain, § 157; Cooley on Const. Lim. * 530; *Coster* v. *Tide Water Works,* 18 N. J. Eq. 63; *In re Peter Townsend,* 39 N. Y. 174; 2 Kent's Com. 340, note *c* [5th ed.]; *Embury* v. *Connor,* 3 N. Y. 517; *In re Albany Street,* 11 Wend. 148, 151; *Bloodgood* v. *M. & H. R. R. Co.,* 18 id. 59; *In re Cooper,* 28 Hun, 524.) The plaintiffs did not acquire title to the premises by adverse possession. (Code Civ. Pro. § 370.) The city having taken the property for public use could not originate or continue an adverse possession in any other way than by devoting the property to a public use. (*Brooklyn Park Comrs.* v. *Armstrong,* 45 N. Y. 243; *People* v. *Kerr,* 27 id. 192, 197.) The taking of the case from the jury, and directing a verdict, by the court, was fatally erroneous. (*Waldron* v. *Tuttle,* 3 N. H. 340; 4 id. 71; *Hill* v. *Draper,* 10 Barb. 469; *Trustees* v. *Kirk,* 68 N. Y. 465–467; *People* v. *Gates,* 56 id. 387; *Whitney* v. *Wright,* 15 Wend. 177, 178.) If improper evidence is admitted under an objection and exception, the judgment must be reversed, if, by any possibility, the party may have been injured thereby. (*Brague* v. *Lord,* 67 N. Y. 499; *Baird* v. *Daly,* 68 id. 449–451; *N. Y. G. & I. Co.* v. *Gleason,* 78 id. 517; *Foote* v. *Beecher,* Id. 157; *Anderson* v. *R., W. & O. R. R. Co.,* 54 id. 343.) The plaintiff was estopped from bringing and maintaining these actions. As the defendant was in possession, the plaintiff was bound to make out a good legal title. If it failed to do so, the question of the defendant's title became unimportant. (*Sweet* v. *B., N. Y. & P. R. Co.,* 79 N. Y. 297.)

*William L. Turner* for respondent. Whatever *prima facie* right the appellant's possession may have made out was amply met and overcome by the evidence of the respondent's prior possession during the whole of the period indicated. (*Smith* v. *Lorillard,* 10 Johns. 356.) The city acquired absolute title to the property in fee by the proceedings taken under chapter 246 of the Laws of 1839. (*Dunham* v. *Williams,* 37 N. Y.

251; *People ex rel. Murphy* v. *Kelly*, 76 id. 475–489; *Embury* v. *Connor*, 3 id. 518, 521.) The regularity of the proceedings was sufficiently proven. (Code of Civ. Pro. § 921; *Teale* v. *Van Wyck*, 10 Barb. 377; *King* v. *Stowbridge*, 8 B. & C. 96; *Dolan* v. *Mayor, etc.*, 62 N. Y. 472; *Embury* v. *Connor*, 3 id. 511; *Sherman* v. *Kane*, 86 id. 57–65.) Adverse possession by the city was established by uncontradicted and incontrovertible evidence, to which no exception was or could have been taken. (*City Bank of Brooklyn* v. *Dearborn*, 20 N. Y. 246; *Starbird* v. *Burrow*, 43 id. 200; *Heine* v. *Mayor, etc.*, 61 id. 171.) The building department has nothing to do with the title to property, but only with the manner of its improvement. No recognition by it of Carleton or anyone else, as putative owner, could foreclose or estop the municipality from asserting its title. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *Ham* v. *Mayor, etc.*, 70 id. 459; *Maximilian* v. *Mayor, etc.*, 62 id. 160; *O'Mara* v. *Mayor, etc.*, 1 Daly, 425; *Terhune* v. *Mayor, etc.*, 88 N. Y. 251.)

EARL J. These are actions of ejectment, involving the title to most of that portion of a block of land situated in the city of New York, bounded by One Hundred and Twentieth and One Hundred and Twenty-first streets, Third avenue and Sylvian place. They were commenced in April, 1878, and brought to trial in 1885 at a Circuit, and verdicts therein were directed in favor of the plaintiff.

Prior to 1838 the lands in question belonged to private owners. Early in that year a petition was presented to the common council of the city asking that they be acquired by the city for a market and public square, and the following resolution was adopted by it:

"*Resolved,* That the market committee report on the propriety of purchasing land between One Hundred and Twentieth and One Hundred and Twenty-first streets, near Third avenue, for a public market."

The committee reported, recommending the purchase of the property for the purposes mentioned, and that application be

made to the legislature for a law authorizing the taking of the property; and in pursuance of their report the following resolutions were adopted:

"*Resolved*, That application be made to the legislature for a law authorizing the taking of a plot of ground on the Third avenue, between One Hundred and Twentieth and One Hundred and Twenty-first streets, and running back two hundred and seventy-five feet, for public purposes by commissioners to be appointed by the Supreme Court, and that the counsel of the board prepare a memorial and law for that purpose.

"*Resolved*, That the market committee be authorized to purchase from the owners of the above described property any part thereof, provided the same can be obtained on reasonable terms, to be reported to and approved of by the common council."

In pursuance of the application made on behalf of the city, the legislature passed the act (Chap. 246 of the Laws of 1839), the first section of which provided that it should be lawful for the city to acquire and become the owner in fee of the block of land in question; and section 2 provided the manner by which the city could acquire the title to the lands by condemnation proceedings. It is now claimed, on behalf of the city, that proceedings were taken in 1839 under the act to acquire title to the lands, and that by such proceedings it acquired a perfect title to them. Upon the trial, however, the city was unable to prove all the proceedings. It proved the official oath of the commissioners of estimate and assessment taken in July, 1839, which was entitled "In the Matter of the Application of the Mayor, Aldermen and Commonalty of the City of New York to take land in the Twelfth ward of said city for public use;" the report of the commissioners to the Supreme Court, dated August 18, 1839, and an additional or supplemental report, dated August 31, 1839, and an order of the Supreme Court confirming both of the reports made on the 3d day of September, 1839. There was also proof that the city had paid the amounts awarded to the owners of the

lands.   The defendant claims that the act of 1839 was uncon-
stitutional; that the proceedings taken thereunder were irregu-
lar and invalid; and that enough had not been proved to
show that the court had jurisdiction to make the final order;
and that, therefore, the city did not become vested with the
title to the lands by virtue of those proceedings.

We do not deem it important now to determine whether,
by virtue of the proceedings, the city obtained a perfect
title to the lands, because we think that its possession taken
under and in pursuance of them is sufficient to enable it to
maintain these actions against the defendant; and they will be
considered now only as they bear upon and characterize the
possession of the city.

Immediately after the proceedings were closed the city
took possession of the lands, and the common council passed
a resolution and appropriated money for the building of a
market thereon.   In 1842 the common council, by resolution,
directed a sale of all dwelling-houses and other buildings upon
the lands except the market-house.   In 1843 the city caused a
strong, substantial fence to be built all around the lands, and
it thereafter leased the market-house, and that was occupied
under it for about twenty years.   It also erected thereon two
engine-houses, one prior to 1847, and the other in 1849.   The
lands remained inclosed, with these buildings thereon, until
about 1860, when, in pursuance of resolutions adopted by the
common council, the buildings were removed therefrom.   In
September, 1863, the common council adopted a resolution
directing the street commissioner to have the lands, which
were then called the Harlem Park, thrown open to the public
as a park, and to have benches and seats placed therein for the
accommodation of those who might resort there.   This was
done, and walks were made and trees planted, and the lands
were used as a park for a number of years, down to 1866 or
1867, during all of which time there was a substantial fence
around the same.   In 1867 the property was put up by the
commissioners of the sinking fund for sale at auction in sepa-
rate lots.   The purchasers of some of the lots took title and

erected buildings thereon.   The purchasers of others refused to take title, and such refusals resulted in litigation between the purchasers and the city, which continued for several years. During the five or six years subsequent to 1867, the lands which the purchasers refused to take were neglected, and the fences went to decay, and what was before a park was open to intruders, and to all persons who chose to go there for any purpose.

Such is the claim which the city acquired to these lands by possession prior to 1867; and this title by possession is sufficient to enable it to maintain these actions against the defendant, unless he can show a better title.   (Tyler on Ejectment, 72, 73; *Allen* v. *Rivington*, 2 Williams' Saunders, 111 a; *Doe* v. *Webber*, 1 A. & E. 119; *Asher* v. *Whitlock*, 1 Q. B., L. R. 1; *Smith* v. *Lorillard*, 10 Johns. 337; *Novion* v. *Hallett*, 16 id. 325; *Jackson* v. *Denn*, 5 Cow. 200; *Whitney* v. *Wright*, 15 Wend. 171; *Carleton* v. *Darcy*, 90 N. Y. 566.)

There is no pretense of any title to the lands on the part of the defendant.   He went into possession of them about 1873, as a mere intruder, without any title whatever from any person proved to have had any title or interest in them.   It is true that he took several deeds of the lands within a few years after that date.   But the deeds came from persons who, so far as this record discloses, were themselves mere intruders, and whose possession, if they had any, antedated the possession of the defendant by only a very short period of time.   He did not show that he, or any of the persons under whom he claims title, were in possession prior to 1873, or about that time, about five years before the commencement of these actions.   As against him, therefore, the prior possession of the city gave it standing for a recovery in these actions, as we held in the case of *Carlton* v. *Darcy* (*supra*), which involved a portion of the same tract of land now in question, unless the city so abandoned its possession prior to 1873 that it thereby lost any right or benefit which it would otherwise have from such possession.

Possession of land is *prima facie* evidence of title, and is

sufficient evidence of title as against all persons but one who can show either a prior possession or a better title. It must be a possession *animo dominendi.* The benefit of such a possession is not lost if the possessor leaves the land temporarily vacant *animo revertendi.* As against a subsequent intruder without right, such prior possession is sufficient evidence of title. But one who has entered upon the land without a title may abandon his possession intending to surrender his dominion over the same, and then any other person may enter upon the vacant land and have the benefit which possession gives even against such prior possessor. Such abandonment may be evidenced by any unequivocal act or by long continued absence from and inattention to the land, or it may be inferred from other circumstances.

Here there is no evidence that the city intended to abandon these lands. There was a short period of time, from 1867 until 1873, when so much of them as were not effectually sold were very much neglected. They were left open to the public, and the city does not appear at that time to have had any particular use for them. It could not, like an individual, live upon or personally occupy them. Having taken the proceedings to acquire the title to them, having paid for them and improved and possessed them for many years, it is not a justifiable inference from any of the evidence that it meant to abandon them and not to resume its possession of them at any time it desired. In 1871 a committee of the sinking fund commissioners, charged with the duty of making an estimate of the value of the real estate belonging to the city, included this property in their report, and during some years before and after that the city was engaged in litigation with parties who had purchased portions of the property at public sale.

We are, therefore, of opinion that the city can maintain this action, basing its right solely upon its prior possession, and that the verdict was properly directed.

But there is a still stronger and, perhaps, more satisfactory ground for the maintenance of this action, and that is the title the city acquired by its adverse possession. It went into

the possession of these premises, claiming to be the owner thereof, as early as 1842, and it is absolutely undisputed in the evidence that it retained the possession as owner for more than twenty years thereafter, during all of which time the lands were protected by a substantial enclosure. A city, as well as an individual, may obtain title to land by adverse possession. (*Sherman* v. *Kane*, 86 N. Y. 57.) There is no possible ground upon which its title, by adverse possession, can be questioned by the defendant who occupies the attitude of a mere subsequent intruder without any title. The fact that he purchased the same from persons who also had no title in no way fortifies his position. (*Gardner* v. *Heart*, 1 N. Y. 528; *Miller* v. *Long Island R. R. Co.*, 71 id. 380.)

We are, therefore, of opinion that these judgments should be affirmed, with costs.

All concur.

Judgments affirmed.