LUCY A. DUNHAM, Respondent, *v.* JOHN TOWNSHEND et al., Appellants.

In an action to recover possession of certain real estate in the city of New York, it appeared that the premises in question were part of a farm owned by B. in his lifetime. The earliest deed produced by plaintiff was one executed in 1835 to S., the grantor in which, was described as the only child and heir-at-law of B.; the truth of this recital was established by the evidence. As early as 1825 said farm was occupied by McG., a son of said grantor, who cultivated it until 1833, during which time said grantor lived at her homstead in the neighborhood and frequently visited her son at the dwelling-house on the farm, and was in constant communication with him. When his occupation ceased, the farm was rented. *Held,* that possession in said grantor was sufficiently established.

It appeared that said premises were conveyed by S. to H. On the trial plaintiff introduced in evidence a deed from the sheriff to one A., which recited the issuing of an execution against H., the seizure and sale by virtue thereof of the premises conveyed, and the redemption of the land by A., the grantee, the holder of a subsequent judgment against H. On the trial at the General Term, this deed was objected to as invalid, because the judgment on which this execution was issued was not produced and read in evidence. On the argument in this court plaintiff produced a certified copy of the judgment-roll. *Held,* that it could be properly received; and its production removed the objection to the sheriff's deed.

While the production of record evidence is never allowed in an appellate court for the purpose of reversing a judgment, it may be permitted for the purpose of sustaining one.

Plaintiff's title was objected to on the ground that the premises in question were below original high-water mark, and that the title was, therefore, in the city. The city surveyor testified that the avenue on the west side of which the lots are located, was graded between 1850 and 1853; that before that work was commenced he examined the locality, and that the land in question was then about thirteen inches below high-water mark. It appeared the city had levied an assessment on said lots for said grading, and disclaimed any ownership in itself. It also appeared that prior to

1835 high-water mark was east of said avenue at that point, and that the meadows which included said lots, were above the ordinary daily tide, and were not covered by water, except during occasional and severe easterly storms. *Held,* that no title to the land was shown in the city; that the question was not as to high water mark in 1850, but as to where high-water mark was during the occupancy of McG.

Where, in an action of ejectment, the plaintiff establishes title by proper and sufficient conveyance and possession prior to the entry by defendant, and that entry is not attempted to be justified by any claim of right, the burden of establishing a better title than plaintiff's is cast upon defendant.

Reported below (43 Hun, 580).

(Argued December 12, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 31, 1887, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts are sufficiently stated in the opinion.

*John Townshend* for appellants. No possession was shown prior to the deed by McGowan to Sandford, nor subsequently. (*Thompson* v. *Burhans,* 79 N. Y. 99; *Nixon* v. *Walter,* 4 Cent. Rep. 875; *Price* v. *Brown,* 101 N. Y. 669; *Roberts* v. *Baumgarten,* 110 id. 384–5; *Miller* v. *L. I. R. R. Co.,* 71 id. 380; *Gardner* v. *Heart,* 1 id. 528; *Stevens* v. *Hanson,* 39 id. 302–304.) The sheriff's deed did not convey any title. (*Townshend* v. *Wesson,* 4 Duer, 342; Code Civ. Pro., § 1471; *Hart* v. *Coltrain,* 24 Wend. 14; *Bank of Charlestown* v. *Emerie,* 2 L. J. 718; *Johnson* v. *Whitlock,* 13 N. Y. 347; *Goldman* v. *Kennedy,* 17 N. Y. S. R. 433; *Phillips* v. *Scheffer,* 7 Lans. 350; Laws of 1834, chap. 92, § 45; *Hoyt* v. *Dillon,* 19 Barb. 650, 651; *Varick* v. *Tallman,* 2 id. 113; *Jackson* v. *Morse,* 10 Johns. 411; *Doughty* v. *Hope,* 3 Denio, 598, 1 N. Y. 79; 2 R. S. 192, § 158; *Moore* v. *Townshend,* 102 N. Y. 387; *Phillips* v. *Scheffer,* 7 Lans. 347; *Hasbrook* v. *Burhans,* 47 Hun, 487; *Jackson* v. *DeLancey,* 11 Johns. 365; 13 id. 557; *Jackson* v. *Catlin,* 2 id. 248; *Jackson* v. *Roosevelt,* 13 id. 97; *Herrick* v. *Morrell,* 33 N. W. Rep. 849.) The premises were below high-water mark. (*Mayor, etc.,* v.

*Hart*, 95 N. Y. 443; *Colgrove* v. *N. Y. & N. H. R. R. Co.*, 20 id. 494.) If Chas. Henry Hall acquired any title, then the sheriff's deed, not having been established, his title passed to his assignee upon trust to sell for the benefit of his creditors. (*Kip* v. *Hersch*, 103 N. Y. 565; *Florence* v. *Hopkins*, 46 id. 186; *Bennett* v. *Garlock*, 79 id. 302; *Roseboom* v. *Mosher*, 2 Denio, 61; *Odair* v. *Leutt*, 3 Hill 182, 186.) Plaintiff did not prove an ouster or a total denial of her title. (Code of Civ. Pro., § 1515; *Edwards* v. *Bishop*, 4 N. Y. 61; *Gilman* v. *Gilman*, 111 id. 265; *Parker* v. *Locks*, 2 Metc. 91; 87 N. Y. 353; *Edwards v. Bishop*, 4 id. 61; *Wait* v. *A. Ins. Co.*, 13 Hun, 371.) The deed by Hannah J. Perry and others to Lavina Dimmick and respondent was improperly received in evidence. (*Hubbell* v. *Moulson*, 53 N. Y. 226; *Wisner* v. *Ocumpaugh*, 71 id. 113; *Dawley* v. *Brown*, 79 id. 390.) A suitor having two remedies must elect upon which he will rely and abide by his election. (*Onderdonk* v. *Voorhis*, 2 Robt. 624.) The Court of Appeals is a court created by statute, and its jurisdiction is such only as the statute prescribes. (Code Civ. Pro., § 190; *Johnson* v. *Whitlock*, 13 N. Y. 349; *French* v. *Powers*, 80 id. 153.

*Abel Crook* for respondent. Plaintiff's title being established, possession is presumed, and the burden of proving adverse possession was thrown upon defendants. (*Stevens* v. *Hauser*, 39 N. Y. 302; *Florence* v. *Hopkins*, 46 id. 186; *Thompson* v. *Burhans*, 61 id. 52; *Thompson* v. *Burhans*, 79 id. 99; *Carleton* v. *Darcey*, 90 id. 573.) The objections urged by defendants are insufficient to defeat the title of plaintiff. (3 R. S. [6th ed.], 635, § 83; *Jackson* v. *Roberts*, 11 Wend. 422; *Townshend* v. *Wesson*, 4 Duer, 342; Code, § 1471; *Phillips* v. *Shiffer*, 7 Lans. 347; *Burt* v. *Place*, 4 Wend. 591; *Ritchie* v. *Putnam*, 13 id. 524; *Williams* v. *Wood*, 14 id. 127; *Dresser* v. *Brooks*, 3 Barb. 429; *Bank of Charleston* v. *Emerick*, 2 Sandf. 718; *Jarvis* v. *Sewall*, 40 Barb. 449; *Robert* v. *Good*, 36 N. Y. 408; *Stillwell* v. *Carpenter*, 62 id. 639; *Porter* v. *Waring* 69 id. 250–255; *Day* v.

*Town of New Lots*, 107 id. 148, 157; *Wood* v. *Morehouse*, 45 id. 368, 379; *Phillips* v. *Schiffer*, 7 Lans. 347; Laws of 1875, chap. 545; 2 R. S. [6th ed.], 1110, § 80; *Jackson* v. *Cole*, 4 Cow. 587; *Houg* v. *Hoag*, 35 N. Y. 490; *Kip* v. *Hirsh*, 103 id. 565.) There was an actual ouster of plaintiff and a total denial of her rights by defendants, who are intruders and without lawful right of possession. (*Miller* v. *L. I. R. R. Co.*, 71 N. Y. 380; *Price* v. *Brown*, 101 id. 669; *Clason* v. *Rankin*, 1 Duer, 341; *Child* v. *Chappell*, 9 N. Y. 246; *Leprell* v. *Kleinschmidt*, 112 id. 364; *Carlton* v. *Darcy*, 90 id. 573; *Jackson* v. *Harder*, 4 Johns. 202, 210; *Parmelee* v. *O., etc., R. R. Co.*, 6 N. Y. 81; *Hoag* v. *Hoag*, 35 id. 473.) Defendant's exceptions were properly overruled. (*Thompson* v. *Burhans*, 79 N. Y. 99; *Langley* v. *Wadsworth*, 99 id. 61; *N. J. S. Co.* v. *Mayor, etc.*, 109 id. 621.)

BROWN, J. This action was brought to recover the possession of an undivided one-half of five lots of land, situated on the southerly side of Ninety-ninth street in the city of New York.

The action was defended by the defendant Townshend, the other defendants being in the occupancy and possession of the land under him. Possession was demanded from these defendants before the commencement of the action and refused. Townshend did not in his answer allege any ownership in the property.

On the trial it appeared that he had taken a deed of an undivided one-sixth of the property, but it was not shown that either of his grantors had any title whatever in or to the property attempted to be conveyed. The objections now made to the judgment consist wholly in defects alleged to exist in the plaintiff's title.

The earliest conveyance produced by the plaintiff was a deed from Margaret McGowan to Edward Sandford, dated January 30th, 1835. In this deed the grantor was descibed as "widow of Andrew McGowan, deceased, and the only child and heir-at-law of Samson Benson, deceased." The testimony

showed that the original farm, which included the five lots which are the subject of this suit, was known as the "Benson" farm, and was owned by Samson Benson · in his life time. Margaret McGowan was Samson's daughter and heir. She had a son Andrew, the father of Henry P. McGowan, who was a witness on the trial. As early as 1825, Andrew McGowan resided at One Hundred and Fifth street and Second avenue upon this farm. He cultivated the tillable land and used the marshes and salt meadows for pasture and to cut grass therefrom. His occupation continued until 1833, when the farm was rented out. It was sold by Margaret McGowan in 1835. During her son's occupation of this part of the farm, Mrs. McGowan lived at her homestead at McGowan's pass, now a part of Central Park. She visited her son frequently at the dwelling-house on the farm, and there was constant communication between them.

The objection is made that possession of the farm by Mrs. McGowan was not shown. We think the evidence sufficiently established possession of the land in Mrs. McGowan. The relations shown to exist between the mother and her son are entirely inconsistent with the claim that the son's possession was adverse to his mother's title, and show that he held under her and subordinate to her rights. Edward Sandford conveyed the property to Charles Henry Hall.

On the trial the plaintiff introduced in evidence a deed from Jacob Acker, "late sheriff of the city and county of New York," to Isaac Adriance. This deed recited the issuing to the sheriff of an execution out of the Superior Court of the city of New York, at the suit of the president, directors and company of the Mechanics' Bank of the city of New York, plaintiff, against Charles Henry Hall, defendant, with the usual directions to seize and sell the premises thereby conveyed; the sale thereof to one George Haus, and the redemption of the land by Isaac Adriance, the holder of a subsequent judgment against said Hall. It described and purported to convey the land in such a manner as to include the lots in controversy.

An objection strenuously urged on the trial and at the Gen-

eral Term against this deed as a conveyance of the title, was based on the omission of the plaintiff to produce and read in evidence the judgment on which the execution under which the sale was made was stated to have been issued. On the argument in this court the respondent produced a certified copy of the judgment-roll. The appellant objects to its reception on the ground that it is improper for this court to act upon information thus obtained. While the production of record evidence is never allowed in an appellate court for the purpose of reversing a judgment it is sometimes permitted for the purpose of sustaining a judgment. (*Stillwell* v. *Carpenter*, 62 N. Y. 639; *Day* v. *Town of New Lots*, 107 N. Y. 157.) This has frequently been decided in respect to records of judgments, exemplification of bankrupt discharges, certificates of naturalization, etc. (*Burt* v. *Place*, 4 Wend. 591; *Ritchie* v. *Putnam*, 13 id. 524; *Williams* v. *Wood*, 14 id. 127; *Jarvis* v. *Sewall*, 40 Barb. 449; *Dresser* v. *Brooks*, 3 id. 429.) Evidence of this character is received by the appellate court for the reason that, being in its nature incontrovertible, it would be idle to send the case back for a new trial for the sole purpose of admitting it. We think we may therefore receive and examine the judgment-roll, and, as it is regular in all respects, its production removes the objection heretofore urged to the sheriff's deed, and also the objection arising out of the general assignment of Hall for the benefit of creditors, as this assignment was of a date subsequent to the docketing of the judgment under which the sheriff's sale was made.

The next objection taken to the plaintiff's title was that the land in dispute was below original high-water mark, and the title therefore was in the city of New York. There was no substantial dispute as to the facts on this question. The only witness called by the defendant on this subject was James E. Sewell, a city surveyor. He testified that Second avenue was graded between 1850 and 1853 and that before that work was commenced, he examined the locality and that at the point where Ninety-ninth street intersected Second avenue high-water line was a little over a foot above the level of the marsh,

and that the lots in controversy were about thirteen inches below high-water mark. He knew nothing about the locality prior to the examination of the ground preparatory to grading Second avenue.

As tending to contradict the effect of this testimony, it appeared that the city had levied an assessment on the lots in controversy for the expense of grading Second avenue and had disclaimed any ownership therein. It further appeared, without contradiction, that prior to 1835 high-water mark was east of Second avenue at Ninety-ninth street, and that the meadows which included the lots in question were above the ordinary daily tide, and were not covered by water except during occasional and severe easterly storms. Upon this testimony we do not think it was error for the court to hold that no title to the land was shown in the city. The important question was not where high-water mark was in 1850, or what effect the filling in and grading of streets over the meadows may have had on the flow of the tide, but was, rather, where ordinary high-water mark was during the occupancy of the farm by McGowan. This was shown by uncontradicted evidence to have been below the level of the lots in controversy. Title in the city could not, therefore, be predicated on the fact that the lots were originally within the line of the ordinary flow of the tides.

This view of the case renders unnecessary any reference to the deed from the city to Perry, any further than to say that it was competent to show that the city made no claim to the land in dispute, and had conveyed to Perry as a trustee for the plaintiff, for the purpose of removing any possible objection to the plaintiff's title. As the city had no title to the land, none passed to Perry by the deed, and it is of no importance in this action whether the conveyance from Perry's heirs to the plaintiff was sufficiently proven or not.

Title and possession were thus established in the plaintiff's grantors, and that title by proper and sufficient conveyances was shown to have become vested in the plaintiff. This was all prior to defendant's entry, and was sufficient to enable

plaintiff to maintain ejectment against the defendant who was a mere intruder and whose entry on the lots was without a shadow of right, and threw upon him the burden of establishing a better title than that of the plaintiff. (*Carleton* v. *Darcy*, 90 N. Y. 566–573 ; *Stevens* v. *Hauser*, 39 N. Y. 302.)

As already stated he neither alleged or gave evidence of any title to the land. His entry was wrongful and his occupancy that of a trespasser.

There was ample evidence of actual ouster of the plaintiff and a denial of her rights by the defendant.

We find no error in the record of the trial and the judgment should be affirmed with costs.

All concur.

Judgment affirmed.