## HEDGES v. PAYNE et al.

*(Supreme Court, General Term, First Department.* February 18, 1892.)

**1. REPLEVIN—FRAUDULENT ACQUISITION OF GOODS—EVIDENCE.**
An insolvent jeweler obtained from plaintiff a quantity of diamonds on "memorandum" to select such as he needed and return the balance, title to remain in plaintiff until selection made and bill rendered. A few days after, the jeweler confessed judgment in favor of his wife, his wife's uncle, mother, and cousin, each; and immediately afterwards executed a general assignment for the benefit of creditors. The jeweler had obtained goods from other dealers in the same way, and the same attorney acted as counsel for him and for the judgment creditors. After the assignment the jeweler secreted himself in New Jersey. *Held*, in replevin to recover the diamonds, that the evidence justified a submission to the jury of the question of fraudulent intent of defendant in obtaining them.

**2. SAME—PRESUMPTION OF FRAUD.**
The fact that plaintiff failed to show that the judgments confessed were not for *bona fide* debts did not exclude an inference of fraudulent intent on defendant's part, from the facts stated.

**3. SAME—FRAUDULENT CONCEALMENT OF GOODS.**
The jury having found that defendant was guilty of fraud in the premises, and plaintiff having been unable to regain possession of his goods on demand, or to find them, he was entitled to a verdict under Code Civil Proc. § 549, subd. 2, giving the owner of goods an action of replevin against a person removing, concealing, or disposing of the same, to prevent their being found or taken, or to deprive plaintiff of the benefit thereof.

**4. SAME—EVIDENCE OF SIMILAR ACTS.**
The fact that defendant had obtained similar goods in a similar manner, the assignments, and the judgments confessed were all properly admitted in evidence as bearing on the question of defendant's fraudulent intent.

**5. SAME—SECONDARY EVIDENCE—INSUFFICIENT OBJECTION.**
Evidence of the contents of defendant's books was received to show the absence of entries therein respecting plaintiff's goods. Objection was made as follows: "Defendant's counsel renews his objection to allowing the witness to answer what those books show." It did not appear that any such prior objection had been made. *Held*, insufficient as a statement of the ground of objection at the time thereof.

Appeal from circuit court, New York county.

Action by James Hedges against William H. Payne and others. From a judgment for plaintiff, defendant Payne appeals. Affirmed.

Argued before VAN BRUNT, P. J., and LAWRENCE and O'BRIEN, JJ.

*Jandine Lyng,* (*Abram J. Rose,* of counsel,) for appellant. *Anderson & Howland,* (*Henry E. Howland* and *Geo. Welwood Murray,* of counsel,) for respondent.

O'BRIEN, J. The action was brought to replevin certain diamond stones, which the complaint alleged had been consigned on memorandum, in December, by the plaintiff to the defendant. The complaint alleges a demand, and a failure to return, and "that said defendant Payne wrongfully, unlawfully, and fraudulently detained said property from the plaintiff; that the de-

fendants have, or the defendant Payne has, concealed, removed, or disposed of said jewelry, or some part thereof, so that the same cannot be, nor any part thereof, found or taken by the sheriff, and with the intent that the same should not be so found and taken; that the jewelry had been concealed, removed, or disposed of so as to deprive the plaintiff of the benefit thereof."

The defendant (appellant) Payne, for the purpose of reversing the judgment, asserts that there was no evidence at the close of plaintiff's case to sustain the allegations of the complaint, and that the motion then made to dismiss the complaint should have been granted, and that no evidence was afterwards furnished to warrant the court in submitting the case to the jury. A mere glance at the testimony will demonstrate that this contention is not supported. The evidence offered by plaintiff tended to show that, on December 12, 1887, Payne called upon Hedges, and obtained the goods on memorandum. For these he was to pay "spot cash," and obtain a bill or return the goods, as appears from the memorandum itself, which is offered in evidence, from which the following is an extract: "Consigned on memorandum to Messrs. Payne, Steck & Company by William S. Hedges & Company. The under-mentioned goods are for your examination, to enable you to select such as you desire to purchase. None of them are sold, nor does the title thereto pass until after we shall be apprised of your selection, and have rendered a bill of sale therefor."

The diamonds were delivered on December 13th and 23d. Between the latter date and the 28th plaintiff sent several times, and, though not seeing the defendant Payne, demanded of his clerk the return of the goods. On the 28th of December Payne confessed judgment,—to his wife for $14,504.05; to his wife's uncle for $2,017.31; to his wife's mother for $7,039.07; to his wife's cousin for $1,853.31; and to other persons judgments amounting in all to about $4,000. Later, on the same date, he made a general assignment for the benefit of his creditors, which was filed on the morning of the 29th of December. From the schedules it appears that the firm assets were about $30,000, and the liabilities $137,000. It was also shown that the same attorney who drew up the assignment, and has acted as Payne's counsel since, also acted in behalf of the judgment creditors. It was also made to appear that, about the same time, the defendant obtained from other dealers in the trade goods on memorandum, which he never returned or paid for. On December 26th, Payne was seen in his office by the janitor of the building, who testified that he was alone, that the safe was opened, and some jewelry spread upon the table, and that, subsequently, he left the building, carrying a satchel with him. After the assignment on the 28th, and after the sheriff had made a levy under the executions on the confessed judgments, the plaintiff endeavored to find the defendant Payne, and finally located him in Brick Church, New Jersey. He gave no satisfactory explanation of the disposition made of the diamonds, and an examination made of the firm's sales-book and memorandum book, afterwards, by one of the plaintiff's clerks, failed to show any entry during the month of December of any goods which resembled the goods consigned on memorandum by plaintiff, except one entry, which, judging from the price, might or might not have been of the pairs of diamonds consigned on December 13th.

Upon such testimony, we fail to see what the trial judge could have done otherwise than submit the questions involved to the jury, which were substantially two. On the first, as to whether the plaintiff parted with title, there was no dispute, it being evidenced by the writing, an extract of which has been given, and which showed the terms and conditions upon which the diamonds were received, and the agreement of the parties themselves that the title thereto should remain in the plaintiff. The only question that remained in the case, practically, was as to whether or not there had been a fraudulent disposition of the property, so as to deprive the plaintiff of the benefit thereof,

and the testimony showed that the defendant had secured diamonds of other dealers in the same way, which he failed to account for or return; that when he obtained such goods there was reason to believe that he knew that he was utterly insolvent, and that some of the property thus obtained, together with the balance of the assets of his firm, was subjected to a levy upon confessed judgments in favor of relatives, followed so closely by a general assignment as to raise a strong presumption that both constituted but a single transaction, and that the intention was to give an unlawful preference to relatives. All these facts and circumstances were properly admitted, and competent to be submitted to the jury upon the question of whether or not, in the absence of any explanation as to what disposition had been made of plaintiff's property, there was not a fraudulent intent in obtaining plaintiff's goods and disposing of the same, so as to prevent his having the benefit thereof. *Abegg* v. *Schwab*, (Sup.) 9 N. Y. Supp. 681. This case is authority for the view that the plaintiff's failing to show that the judgments confessed were not *bona fide* debts did not exclude fraudulent intent. As therein stated: "It is, of course, an important circumstance, but, as was said in *Billings* v. *Russell*, 101 N. Y. 228, 4 N. E. Rep. 531, 'It is not inconsistent with an intent on the part of a debtor to defraud his creditors.'"

Upon a consideration of the above facts, the jury found that the defendant was guilty of fraud, and we see no reason for disturbing their verdict. Where, as here, the title to the property was shown to be in the plaintiff, all that was necessary to support a recovery was for the plaintiff to show that the goods had been removed, concealed, or disposed of, so that they cannot be found or taken by the sheriff, and with the intent that they should not be so found or taken, or to deprive the plaintiff of the benefit thereof. Code Civil Proc. § 549, subd. 2. It was not error to admit in evidence the assignments and the judgments confessed, as these were material to be considered in connection with all the other facts for the purpose of showing the intent. The weight to be given them, so that no injury might result to appellant, was clearly marked by the charge of the learned judge: "That the mere fact that the defendant became embarrassed in business, and made an assignment, and confessed judgment, does not establish any wrongful or fraudulent intent."

The only other exception which has been pressed upon this appeal is that taken to the admission of evidence as to the contents of the book. That all primary sources were exhausted before secondary evidence was allowed is evident by the record. The only suggestion made of any omission was the alleged failure of the plaintiff to show a notice served upon the defendant to produce the books. The respondent insists that such a notice was given, but its failure to appear in the case compels us to regard the question as though no notice had been given. Under these circumstances, however, where there is a reasonable probability that such notice was given because, upon the argument of the appeal, the original notice to produce was exhibited, it remains for the appellant, in order to gain any advantage from an objection based on such slender foundation as the omission, to include "the notice to produce" in the printed case on appeal to bring himself clearly within the rule entitling him to the benefit of an exception on this ground. An examination of the case will show that, when the secondary evidence was about to be given, the objection was interposed in the following language: "Defendant's counsel renews his objection to allowing the witness to answer what those books show. Objection overruled, and defendant excepts." It nowhere in the case, prior to the objection thus taken, appears that any such objection was made, nor was any evidence given of entries in regard to the books. It will be noticed, therefore, that the grounds of objection when made were not stated; and a general objection of this kind is not available, particularly where, as here, it is not shown that any injury resulted by the exercise of the discre-

tion which is vested in the trial judge, as to when and upon what proof he would admit secondary evidence of the contents of books. As has been said in the case of *Cutlery Co.* v. *Babcock*, 22 Hun, 487: "It is so much a matter of discretion with the judge at the trial, in determining whether a case is made for the introduction of secondary evidence, that his ruling should not be reversed unless it appears very clearly that error has been committed which has prejudiced the case of the party who complains." It appears from the evidence that these books were not in the possession of the defendant, but had been surrendered to the original assignee subsequently to the substituted assignee, and had been seen for the last time when used upon the trial of an action in this court. Under these circumstances, it can hardly be claimed that the defendant was prejudiced by a failure to serve him with a notice to produce books not in his possession, and not under his control, even if we assume what appears to be contrary to the real fact, that such notice was not given. We see no reason for disturbing the judgment, and it should, together with the order appealed from, be affirmed, with costs.

VAN BRUNT, P. J. I concur, but I do not concur in what is said as to production of notice to produce upon the argument the notice to produce. Sometimes appellate courts will receive record evidence, (*Dunham* v. *Townshend*, 118 N. Y. 286, 23 N. E. Rep. 367, and cases cited,) but no other kind of proof. The notice to produce was not a record, and did not necessarily prove itself.

LAWRENCE, J., concurs in the result.