JACKSON, ex. dem. JACOB P. WEIDMAN, against HUBBLE.

EJECTMENT, for premises situate in the town of *Bern*, in the county of *Albany*, tried at the *Albany* circuit, in *October*, 1821, before his Honor, Mr. Justice WOODWORTH, when a verdict was found for the plaintiff, subject to the opinion of the Court on a case, of which the following is a brief abstract :

On the *3d* of *March*, 1787, *Stephen Van Rensselaer* conveyed to *Jacob Weidman*, a farm of 261 acres, including the premises in question. *Jacob Weidman* had a son, *Petrus*, who was introduced as a witness for the plaintiff, and testified, that on the *7th* of *November*, 1803, he (*Petrus*) was in possession of the whole farm, claiming it as his own. On that day, his father being still living, (and he lived several years afterwards) *Petrus* conveyed 100 acres, being the eastern part of this farm, by deed of quit claim to his son *J. P. Weidman*, the lessor of the plaintiff. This 100 acres included the premises in question, which are a strip of 23 acres, lying along the western line of the 100 acres. The lessor of the plaintiff took actual possession of the land included in his deed, except the 23 acres. *Jacob Weidman* died in 1806 ; and on the *13th* of *February*, 1810, *Petrus Weidman* conveyed to *Paul Weidman* and the defendant, all the land conveys

*If one in possession of lands, without title, convey them by quit claim deed, this passes a possessory title and nothing more :*

*And though the grantor afterwards acquire the absolute title, it shall not inure to the benefit of the grantee ;*

*Otherwise, had the deed been with warranty.*

*In the latter case it would operate as an estoppel, for avoiding circuity of action.*

*Where one in possession of land claiming title, but having no other right, conveys claiming title the possession in ejectment by subsequent possession*

the land by quit claim deed ; and the grantee enters upon, and improves part, according to his deed, the possession of the residue continuing in the grantor, of the grantor is the possession of the grantee ; and the latter may maintain ejectment grounded upon such a possession against the grantor or any one who is in possession without title :

For, in ejectment, where neither party has title, the one shewing the prior possession shall recover, unless the last possession have been adverse for 20 years.

Where A, in possession, conveys land to B, the entry of B, and actual possession of part, is a valid possession of the whole.

Where two adjoining owners of land have agreed on a division line between them, and held and occupied accordingly for 29 or 30 years, they are concluded, and the line cannot be questioned by either party, though it be not according to their title.

☞ The grantor in a quit claim deed is a competent witness for the grantee, in ejectment brought by the latter for the land conveyed.

veyed by *Van Rensselaer* to *Jacob Weidman*, excepting 100 acres, stated in the deed to have before been conveyed by *Petrus Weidman* to *Jacob P. Weidman*. directly on the east end of the before described premises. The lessor of the plaintiff never had actual possession of the 23 acres. *Petrus Weidman* swore that the deed of 1803 was executed the day it bore date ; and that he inherited the 261 acres from his father, *Jacob Weidman.*

The defendant's counsel then read in evidence a deed, with warranty and covenants of seisin, &c. from *Petrus Weidman* to the lessor of the plaintiff, dated *May 13th*, 1810, purporting to convey 100 acres of land, the description of which included the lessor's actual possession only under his first deed, excluding the 23 acres, and to make up the 100 acres, extended south of *Foxen* creek, which intersected the original farm ; and this last deed covered a few acres before conveyed to the defendant. This deed was given pursuant to a survey of one *Barber*, made at the joint request of *Petrus Weidman* and the lessor of the plaintiff.

*Jacob Weidman, junior*, bought the land on the east, and *Johannes Vischer* on the north of the original farm ; and as long ago as 29 or 30 years, the eastern and northern boundary of the 100 acres had been agreed upon, designated by a line of marked trees, and surveyed by one *Hunn*, in behalf of *Petrus Weidman* and *Jacob Weidman, junior*, the latter of whom, with *Vischer*, had respectively taken conveyances and held according to the survey, which also corresponded with the actual possession of the lessor of the plaintiff. *Jacob I. Weidman* succeeded to the possession of *Jacob Weidman, junior.* The adjoining lands had been held according to this survey, up to the time of the trial, though the description in the deed from *Van Rensselaer* extended as to part of the division line agreed upon, farther east than this line. The premises in question had again been surveyed in *December*, 1815, by one *Rosekrance*, according to the old line of marked trees. This map was produced on the trial, and also made a part of the case. It gave the plaintiff 23 acres, as included in the deed of 1803, which were in the defendant's possession.

When *Petrus Weidman* was offered as a witness, he was objected to, as interested, having entered into a covenant of warranty in the deed of 1810; but the plaintiff's counsel disavowing an intention to go for any part of the land covered by this deed, which were not included in the deed of 1803, and to admit the plaintiff to be in possession of all the land which it contained, except certain land lying on the south side of the creek, and east of the line of marked trees, the Judge overruled the objection.

ALBANY,
Feb. 1823.

JACKSON
v.
HUBBEL.

The case, of which conveyances were agreed to be made a part, was drawn up by the attorneys at great length. Several maps were also made a part of the case; but the above facts, connected with those stated in the opinion of the Court, are all which are deemed material to present the points of law raised by the counsel, and decided by the Court.

The cause was first argued in *January* term, 1823, by *J. I. Ostrander* and *S. A. Foot*, for the plaintiff, and *E. Williams* and *I. Hamilton*, for the defendant; and Mr. *Foot* and Mr. *Williams* argued it again before the present bench, at the last *May* term.

For the plaintiff it was contended,

1. That *Petrus Weidman* was properly admitted as a witness.

2. That the 100 acres mentioned in the deed of *November* 7th, 1803, must be located according to the boundaries of the farm, as established and held by *Petrus Weidman* at the time of the execution of that deed.

3. That the deed of the 13th of *May*, 1810, is inoperative and void.

4. That from the evidence in the case, the plaintiff is entitled to recover 23 acres of land.

For the defendant it was insisted,

1. That the deed of the 7th *November*, 1803, is inoperative and void.

2. If valid, the location made under it by the lessor of the plaintiff is erroneous.

3. The lessor's deed, of the 13th of *May*, 1810, is valid. This deed, with his acts in taking it, and in locating before and after its execution, and in claiming under it, operate as

a surrender of the first deed, or as an estoppel against any claim under it, and are conclusive against him.

4. *Petrus Weidman* was improperly admitted as a witness.

WOODWORTH, J. On the 7th *November*, 1803, *Petrus Weidman*, for the consideration of $500, bargained, sold and quit-claimed to the lessor of the plaintiff, a parcel of land described in such manner as to contain 100 acres. The boundaries are sufficiently definite to admit of accurate location. By the m ap of *Rosekrance*, a surveyor, marked B, it appears that the defendant is in possession of 23 acres, included in the deed.

It is contended, that this conveyance is inoperative and void. On the 3d *March*, 1787, *Stephen Van Rensselaer*, the common source of title, conveyed to *Jacob Weidman*, the father of *Petrus*, a farm comprising the premises in question. *Jacob Weidman* died 14 or 15 years before the trial, which fixes the period of his death about the year 1806. There is no proof that he ever granted or released any part of his farm to *Petrus*. The only evidence we have on that subject, is derived from the witness, *Petrus*, who says, that at the time he executed the deed to the lessor of the plaintiff, he was the owner, and in possession of the farm. This not being competent evidence of title, and the plaintiff having produced no other, *Jacob Weidman* must be considered as actually seized at that time, and *Petrus* as having possession merely, claiming title. If so, what passed by this quit-claim deed? In *Co. Litt. s.* 346, 265, *b.* it is laid down, that no right passeth by the release, but the right which the releasor hath at the time of the release made, as if the son release to the disseisor of his father, all the right which he hath or may have, without clause of warranty. After the death of his father, the son may enter against his own release, because he had no right at all at the time of the release made, the right being, at that time, in the father. In the case of *McCracken* v. *Wright*, (14 *John.* 194) this doctrine is recognized. The conveyance, in that case, was like the present—it granted, bargained, sold and quit-claimed all the

grantor's bounty lands for his services during the revolution-ary war ; but at the time he had no title. It was held that no title not then *in esse* would pass, unless there was a war-ranty in the deed, in which case it would operate as an estop-pel, for avoiding circuity of action. The deed then con-veyed no title to the land. It transferred to the lessor of the plaintiff a possessory title only. On the 13*th February*, 1810, *Petrus Weidman* conveyed to *Paul Weidman* and the defen-dant, all the land described in the deed of *March* 3, 1787, from *Stephen Van Rensselaer*, excepting 100 acres, stated to have been deeded by *Petrus Weidman* to *Jacob P. Weidman*, directly on the east end of the before described premises. At this date *Jacob Weidman*, the original grantee, was dead. The exception evidently refers to the deed of 1803, and in-tended that the 100 acres should be located according to its boundaries. To that parcel the defendant acquired no right. It includes 23 acres of land, in the possession of the defendant. This fact, merely, cannot avail the plaintiff; for he must recover by the strength of his own title. The alle-gation, that *Petrus* had deeded 100 acres, does not validate the first deed, but leaves it to its legal operation. It is refer-red to as matter of description, by which to locate the 100 acres excepted.

The deed of 13*th May*, 1810, can have no effect upon the present controversy, unless it be considered as a surrender of all the right acquired by the lessor under the first deed. If that is abandoned, by accepting the second deed, then it fol-lows that the plaintiff cannot recover in this action; for al-though the defendant has no title to the 23 acres sought to be recovered, neither has the plaintiff. On this principle, *Petrus Weidman* has both the right of possession and title to the 23 acres. But the second deed ought not to be consid-ered as a surrender of the first. As far as it extends, it is consistent with it, for it conveys a part. The evident inten-tion of *Petrus Weidman* was, that his son *Jacob* should have 100 acres from the east part of his farm. It is clear, from both deeds, that the east line was not to be governed by the courses and distances in the deed from *Stephen Van Rensse-laer*, but by the line settled between *Jacob Weidman*, the first

CASES IN THE SUPREME COURT

grantee, and his son, *Jacob Weidman, jun.* many years be-fore, and corresponding with the marked trees. This line did not extend so far east as the line in the original deed. In pursuance of this agreement, *Thomas Hun* made a survey, and subsequently, when *Jacob Weidman, jun.* obtained a deed, in 1800, his west line extended to the line run by *Hun.*

The deed of *May*, 1810, was given under a misapprehension of the rights of the parties. In the first place, it was not competent for *Petrus Weidman*, after he had conveyed to the defendant, to grant land not included in the exception. The land excepted lies on the north side of the creek, but the second deed conveys to the lessor several acres lying on the south side. If *Petrus had a right* to convey in this manner, the deed does not include the quantity of 100 acres, beause the east boundary is declared to be the division line between *Petrus Weidman* and *Jacob Weidman, jun.* which must be understood as the line agreed on, according to *Hun's* survey. It could not refer to the east line, in the deed from *S. Van Rensselaer* to *Jacob Weidman,* but the line established between them, and by which their possession had been uniformly held. *Barber*, the surveyor, misapprehended the legal construction of the deed, disregarded the line known and recognized between the parties, and followed the original easterly line, in the deed of 1787, to *Jacob Weidman.* In this manner, and including the land on the south side of the creek, the deed is said to contain 100 acres. *Barber* admits, if the east line is governed by the marked trees it will fall short. If the east boundary, as adopted by the parties, had been followed in *Barber's* survey, the west line must necessarily have extended farther west, and included some of the land possessed by the defendant. There is no reason to believe that the second deed was given from a belief that the first was not valid, but rather from a desire expressed by the lessor of the plaintiff, to include the land on the south side of the creek. So far, then, as this deed covers the land, which *Petrus Weidman* had a right to grant, it may be good, but cannot affect any right acquired under the first deed, to such part of the 100 acres as is not comprised in the second. It would be against the manifest intent of the parties, to consider it as a surren-

ALBANY,
Feb. 1824.

JACKSON
v.
HUBBLE.

der of the possessory right to the 23 acres, because the second deed, owing to mistake and misapprehension, granted to the lessor a part only of the 100 acres. But the second deed is not in question. At the trial, the plaintiff disavowed holding under it, and admitted he was in possession of all the land contained within the boundaries on the north side of the creek.

The plaintiff's right will depend on the effect of the first deed. *Petrus Weidman*, when he released, in 1803, had a possessory title to the whole farm. This possession would enable him to recover, in ejectment, against a subsequent possessor, short of 20 years, without title, on the ground of prior possession. The defendant's possession is of that description. It seems, that although the deed of 1803 included the 23 acres held by the defendant, the plaintiff never actually occupied it. No survey appears to have been made until after, or about the time the defendant purchased. *Petrus Weidman* may have continued in the occupancy of the 23 acres until he sold to the defendant; and the defendant, very probably, under the impression that the land excepted did not include this parcel, continued the possession. *Petrus Weidman's* prior possession, without proving an absolute title, would enable him to recover against the defendant. if he had never given the deed of 1803; but having given that deed, which is valid, so far as to transfer his possessory title, the lessor of the plaintiff may maintain the present action, and recover against the defendant, who, to that extent, is a naked possessor, without pretence of title.

In judgment of law, the lessor of the plaintiff had, from the date of his first deed, possession of the premises in question, under colour of title, until the defendant entered. His possession could not be divested, until an entry was made by some other person claiming adversely.

The lessor's prior possession is sufficient to recover. That he did not actually occupy and improve the 23 acres will be admitted; it proceeded probably from the cause already adverted to, the want of correct information as to the manner in which it was to be located but this becomes immaterial in

deciding whether there was not a good constructive possess-- ion to this part. If *Petrus* continued to occupy the 23 acres until he sold to the defendant, the mere fact of occupancy, without a claim of right, would not constitute a hostile possession in opposition to the deed he had given, but a holding for, or under him who had the right.

It is well settled in our Courts, that where A, in possession, conveys a lot or farm to B, the entry of B, and actual possession of part, is a valid possession of the whole lot. In this case the deed is for 100 acres; the plaintiff occupied all but the 23 acres. These facts make out a prior legal possession in the plaintiff to the whole, and entitle him to recover the land comprised within the boundaries of the first deed, and in the possession of the defendant.

In this view of the cause, it follows, that the title to the land excepted in the deed to the defendant, and not included in the deed of the 13*th May*, 1810, to the plaintiff, is still in *Petrus Weidman ;* but with that the defendant has no concern. The title to the land on the south side of the creek, in possession of the plaintiff, is vested in the defendant. The land lying between the division line agreed on for the eastern boundary between *Jacob Weidman* and *Jacob Weidman, junior,* as run by Mr. *Hun,* and the east line, as contained in the deed of 1787, from S. *V. Rensselaer,* has been conveyed by *Petrus Weidman* to the defendant. The quantity within these limits does not exactly appear ; this parcel, with that on the south side of the creek, will equal or nearly equal the number of acres the plaintiff is entitled to recover.

Whether the defendant can recover against *Jacob I. Weidman,* the land on the east of the line of marked trees, is not a question necessary to decide in this cause ; it may not, however, be improper, in order to prevent future litigation, to express an opinion, that the line as ran by Mr. *Hun,* recognized as the true line of division ever since, and possession taken and held accordingly by the parties, cannot at this late day be disturbed ; the defendant's remedy, if he has any, must be on the covenants in his deed from *Petrus Weidman.*

It was objected at the trial, that *Petrus Weidman* was not a competent witness : the objection cannot be sustained ; he had no interest to be affected by the plaintiff's recovery.

The plaintiff has possession of all the land comprised in the deed of *May* 13, 1810 ; he claimed nothing under that deed ; the witness, therefore, could not be liable on any covenant contained in it. Whether the plaintiff recovered or failed, that question, as has been shown, turns on the right acquired by the first deed, which was a quit claim merely.

On the whole, I am of opinion that the plaintiff is entitled to judgment.

SUTHERLAND, J. concurred.

SAVAGE, Ch. J. The first point to be settled, relates to the eastern line of the farm originally conveyed to *Jacob Weidman*. In my opinion, the line of marked trees cannot be disturbed. It was established about 30 years before the trial ; and 20 years before the error, if any, was discovered. The owners on both sides occupied, claiming title according to this line, and did so at the date of the deeds of 1803 and 1810. The lessor of the plaintiff certainly could not have recovered in ejectment against *Jacob Weidman, junior*, at any time since the former became the owner of the 100 acres.

Assuming, then, that the line of marked trees is the eastern boundary of the farm inherited by *Petrus Weidman*, the plaintiff must recover, whether his deed of 1803 or 1810 is operative. By these deeds, 100 acres are conveyed ; and, by the defendant's deed, 100 acres on the east end of the farm, conveyed to the lessor of the plaintiff, are reserved. Of course, the lessor's 100 acres must be first located ; and the defendant has the residue. It must be borne in mind that the lessor of the plaintiff and the defendant both derive title from *Petrus Weidman*. The defendant's deed is dated *February* 13th, 1810; and the reservation is of 100 acres deeded to *Jacob P. Weidman*. This reservation certainly cannot relate to the deed which was subsequently executed on the 13th *May*, 1810. We know of no deed to which it could relate, but that of *November* 7th, 1803, which locates the 100 acres north of the *Foxen* creek ; and the plaintiff must therefore recover 23 acres according to the survey of *Rosekrance*. I am aware that the acts of the lessor of the

plaintiff in receiving the last deed, and locating his 100 acres so as to run south of the creek, seem to negative the idea of the existence, or, at least, the validity of the deed of 1803; but this is not sufficient to oppose to the positive testimony of *Petrus Weidman.*

The deed of 1803 was a quit claim, and the plaintiff disavowed claiming any thing conveyed by the deed of 1810, which was not previously conveyed by that of 1803. *Petrus Weidman* was therefore a competent witness. In my opinion, the plaintiff must have his 100 acres west and south of the marked trees, and north of the creek.

Judgment for the plaintiff.