ALFRED ROE as Executor, etc., Respondent, v. CAROLINA A. STRONG et al., Appellants.

In an action to recover damages for the erection, and to compel the removal, of a wharf and bridge alleged to have been unlawfully erected by defendants upon lands of plaintiffs, adjoining and under the waters of Setauket bay, in the town of Brookhaven, Long Island, plaintiffs claimed title to the land above high-water mark as descendants of F., one of the original proprietors of the town, to whom a lot including the upland adjoining the bay was alloted. It appeared that the structures in question extended above high-water mark in front of the F. lot. *Held*, that in the absence of any evidence of a reservation by the town of land above high-water mark, the presumption was that plaintiffs' title extended to that mark; and so far as said structures extended above it, they were entitled to have them removed.

As to the lands under water plaintiffs claimed title under a deed from S. to B., executed in 1768, which purported to convey "a certain piece of salt thatch," the bounds of which as given included the *locus in quo.* It appeared that plaintiffs and their predecessors in title, so far back as the memory of living witnesses extended, exercised acts of ownership by cutting thatch, leasing the right to cut to others, and in one instance brought suit against an alleged trespasser. It also appeared that, prior to 1693, the town had conveyed to a private person the land under water in the bay up to the line of and excepting that portion included in the deed to B. *Held,* that the evidence justified the presumption of a grant of the soil, and so made out a *prima facie* title in the plaintiffs; and that, therefore, a dismissal of the complaint was error.

*Roe* v. *Strong* (107 N. Y. 350) distinguished and, as to the last point decided therein, questioned.

Reported on a former appeal, 107 N. Y. 350.

(Argued January 20, 1890; decided February 25, 1890.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made June 28, 1889, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought to recover damages for the erection of a wharf and bridge upon plaintiffs' property, and to compel their removal.

The complaint alleges that the original plaintiffs are owners of certain premises situate in Setauket, in the town of Brookhaven, Suffolk county, adjacent to and in front of an arm of Setauket harbor, and a navigable bay or arm of the sea, that defendants are owners of a parcel of land called Strong's neck, situate upon the opposite shore of said bay and which connects with the mainland, where plaintiffs' premises are situated, by a public highway around the shore, and which was the usual means of communication between Strong's neck and the village of Setauket. It also alleges that in July, 1879, the defendants wrongfully commenced, and at the time of bringing the action continued, the erection of a bridge from Strong's neck to the main land and over and across the bay; sunk piles in the land under water, and also on the plaintiffs' lands; that its south-western terminus was built, or was intended

to be built, upon plaintiffs' lands, and that for such purpose defendants unlawfully entered upon their lands; that such bridge is the private property of defendants, and that the public have no property therein or title thereto; that defendants have unlawfully raised or changed the grade of plaintiffs' lands between such terminus and the highway, and in so doing have unlawfully entered upon their property; it also alleges that such structure is a barrier to the passage of vessels, and will prevent their passage beyond plaintiffs' premises, and that they will be compelled to stop in front and discharge their cargoes thereon; and that by the acts aforesaid defendants have incumbered and injured plaintiffs' lands, and that they have not nor can they thereafter have or enjoy the same in so large, ample or beneficial a manner as they otherwise might or would have enjoyed the same.

The answer admits the erection of the bridge; that the bridge and wharf are the defendants' property, but deny plaintiffs' title to the *locus in quo.*

Pending the action the original plaintiffs died and the action was revived and continued by their personal representatives and heirs-at-law.

The plaintiffs' claim of title to the premises in question was derived from two sources. To the land above and to high-water line, as descendants of Richard Floyd, one of the original proprietors of the town of Brookhaven. To the land below high-water mark, as grantees of Adeline Woodhull. It was shown that Floyd was, in 1668, one of the then town proprietors, and one of the persons to whom land was allotted by the first allotment made by the town. That he settled upon and occupied the land which was known as the Floyd homestead lot from the time of the settlement, and that he and his descendants continued in possession.

As to the title to the land between high and low-water mark, plaintiffs claimed title under a deed from Joseph Brewster to Andrew Seaton, dated June 21, 1768, the substance of which, so far as material, and the other material facts are set forth in the opinion.

*John J. Macklin* for appellants. The views of the Court of Appeals, upon which the new trial was ordered, are inapplicable upon the present appeal. (*Roe* v. *Strong*, 107 N. Y. 351.) It is to be presumed that Brewster and the Woodhulls knew the true state of the title. (*Pitney* v. *Leonard*, 1 Paige, 464; *Brown* v. *Bowen*, 30 N. Y. 519.) The deed made by Brewster is to be construed in the light of the surrounding circumstances and the situation of the parties. (*Town of Southampton* v. *M. B. O. Co.*, 116 N. Y. 1; *Moore* v. *Jackson*, 4 W. R., 58, 67.) To justify the court in presuming a valid title or to supply defects in a title, it is only necessary that it should appear that the facts are such as could not, according to the ordinary course of human affairs, occur unless there was a transmutation of title to the party claiming it or that facts are shown which lead to the inference that the title must have had a rightful commencement. (Greenl. on Ev. §§ 46, 48; *Jackson* v. *McCall*, 10 John, 387, 391; Best on Presump. §§ 108, 109; Philips on Ev. [Cowen & Hills' Notes] 311, 477; *Ricard* v. *Williams*, 7 Wheat. 59, 109; *Blight* v. *Rochester*, Id. 535; *Fletcher* v. *Faller*, 120 U. S. 534; *Jackson* v. *Warford*, 7 Wend. 66.) The undisputed facts shown establish the presumpton of a grant in fee. (De Jure Maris, chaps. 3, 4, 5, 6, 7; Hall on Sea Shores [2d ed.], 129-131; 1 Greenl. on Ev. §§ 45, 46, 48; 2 id. § 541; Best on Presump. § 111; *Calmody* v. *Rowe*, 6 C. B. 861.) These rules are applicable no matter what the species of property may be affected by the claim — whether upland or land subject to the flow of the tide, not admitting of such possession as would be the basis of a title by adverse possession. (*Palmer* v. *Hicks*, 6 Johns. 133; Gould on Water Courses, § 22.) The doctrine that the grant of an easement or a right to profits may be presumed from user, applies only to incorporeal hereditaments, and does not extend to land or corporeal property or a claim of title thereto. (3 Washb. on Real Prop. 51; Cowen & Hills' Notes, 311.) The facts show such an occupation of the premises as to afford a basis for a title by adverse possession. (*Ewing* v. *Burnet*, 11 Pet. 41; *Watkins* v. *Holman*, 16 id.

25; *West* v. *Lanier*, 9 Humph. 771, 776; *Clancy* v. *Han dette*, 39 Me. 451.)

*A. A. Spear* for respondents. The court will not help plaintiff out by a "guess;" they must prove their case. (*Taylor* v. *City of Yonkers*, 105 N. Y. 209.) The burden of proof was upon plaintiff, and the facts required of them by this court, on the former appeal to sustain title to high-water mark adjacent to the homestead, have all been found against them on conflicting testimony. (*Davis* v. *Clark*, 87 N. Y. 623; *People* v. *T. A. S. Bank*, 98 id. 661; *Marx* v. *McGlynn*, 88 id. 357; *Hewlett* v. *Elmer*, 103 id. 156; *Hynes* v. *McDermott*, 91 id. 451; *Bassett* v. *Wheeler*, 84 id. 466; *Snyder* v. *Sherman*, 88 id. 656.)

ANDREWS, J. This case is here for the second time. On the former appeal we reversed the judgment in favor of the plaintiffs, rendered after a trial of the issues, for the reasons stated in the opinion then given. (107 N. Y. 350.)

The present appeal is from a judgment affirming a judgment entered upon a dismissal of the complaint at Special Term, at the conclusion of the plaintiffs' evidence, no evidence having been given on the part of the defendants. The sole questions upon the present appeal are whether the case as made by the plaintiffs, *prima facie* established, or tended to establish, that the Floyd Homestead lot was bounded on the east by high-water mark of Setauket harbor; and, *second*, whether the evidence now presented on the part of the plaintiffs justifies a presumption of a grant by the town or freeholders of Brookhaven, to Joseph Brewster or his ancestors, of the soil under water in front of the Floyd premises described in Brewster's deed to Andrew Seaton, dated June 21, 1768.

It is not questioned but that the plaintiffs have succeeded to whatever title was originally vested in Richard Floyd to the homestead lot, and to the title of Brewster to the land under water, embraced in his deed to Seaton, or to whatever right he had in the *locus*. It is also undisputed that the structure erected by Strong, the removal of which is the object of the

present action, extends several feet above high-water mark of the harbor, in front of the Floyd homestead lot, and also across the land under water described in the Seaton deed. It is not now a question whether, assuming title in the plaintiffs to the *locus* upon which the bridge is built, the defendants have acquired, notwithstanding, a right to maintain the bridge. Their title or right, if any, was not disclosed, and if the plaintiffs have title to the soil on which the bridge is built, presumptively the erection is an invasion of such title, and a trespass.

In respect to the boundary of the Floyd homestead lot on the east or harbor side, it was held on the former appeal that the evidence then presented rendered it doubtful whether the title of Richard Floyd, the owner of the homestead lot, antedated the Nicoll patent to the freeholders of Brookhaven, of 1666, and assuming that it did not, but was acquired subsequent to that patent, it was held that there was some evidence in the case, introduced by the defendants, tending to show that in the allotment of town lands under that patent, the cliff, and not high-water mark, was the boundary of the allotted lands on the water side, the town retaining a strip between the cliff and the shore for public use. As the case now stands there is no evidence of such reservation and no ground for a presumption that the lots laid out upon the water were not bounded by high-water mark, or that they extended only to the cliff. It was said in the opinion in the former case, speaking of the Floyd homestead lot: "The fifty acres is adjacent to the harbor, and, in the absence of evidence to the contrary, it cannot be supposed that the person from whom Richard Floyd derived title reserved a strip a few rods wide along the shore, thereby cutting him off from access to the water over his own land." Upon the evidence now appearing there is nothing to overcome the presumption that the Floyd lot was bounded on the east by the water, and, assuming that the water was the boundary, the bridge, so far as it extended above high-water mark, was upon the land of the plaintiffs, and they were entitled, upon the evidence now appearing, to have it removed.

The other question in the case, relating to the alleged title

of the plaintiffs to the land under water embraced in the Seaton deed, depends upon the evidence given on the former trial, supplemented by additional and, as it seems to us, important proof. The town of Brookhaven, under the colonial patents, acquired a proprietary interest in the soil of the bays and harbors within its limits. (107 N. Y. 358, and cases cited.) No grant in fact is shown to have been made by the town at any time to the land under water embraced in the Brewster deed of 1768. But the deed purported to convey to Seaton in fee, for the consideration of £40, " a certain piece of salt thatch," bounded on the east "by a straight line from Col. Smith's gate to Col. Floyd's point." The plaintiffs deduce title under this deed by regular chain, and show that they and their grantors, for a period running back as far as the memory of living witnesses, exercised acts of ownership by cutting the thatch, leasing the right to cut to others, and that in one instance a suit was brought against an alleged trespasser by the person claiming under the Seaton deed. Upon the former appeal it was thought that this evidence was insufficient to show the title to the soil in the plaintiffs, but was consistent with the grant of a privilege merely to Brewster and his grantees to take the thatch, and did not justify a presumption of a grant by the town of the soil. I wrote the opinion in that case, but feel compelled to say that, upon further consideration, I enter-tain much doubt as to the correctness of our former conclusion on that point. Whatever was done by Brewster and his successors in title ought, in accordance with general principles, to be referred to the exercise of a right, and not to usurpation, there being no proof that the acts were tortious, or that they were ever challenged by the town. The cutting of the thatch, and the leasing of the right to do so to others, were the only acts of ownership which, considering the nature and situation of the property, could be exercised, and, while not making out a technical adverse possession under the statute, may justify the presumption of a grant, and perhaps a grant of the soil, and not a right to take thatch merely. Lord Hale, in his treatise *De Jure Maris* (chaps. 3, 4, 5, 6, 7), after

stating that the title to the shore between high and low-water mark is presumptively in the king, but that it may be in the subject, and parcel of the manor adjacent, instances as evidence sufficient to warrant the presumption of title from the crown, "constant and usual fetching gravel, seaweed and seasand between high and low-water mark, and licensing others to do so; enclosing and embanking against the sea, and enjoyment of what is so had," etc. (See also *Calmady* v. *Rowe*, 6 C. B. 861; Phillips Ev. [Cowen & H. notes, Note 311, p. 4]; Greenl. on Ev. [Red. ed.] §§ 46, 48.) The plaintiffs on the last trial put in evidence a patent from Gov. Fletcher to Col. William Smith, Chief Justice of the Province of New York, dated October 9, 1693, which recited the purchase by the grantee of large tracts of land on Long Island (Nassau), and among others of "all such thatch beds or creek thatches as lyes within the harbor (Setauket) in a direct lyne from ye marked tree by the gate to ye southermost poynt of ye said Little Neck called Floyd's Poynt, given by ye townesmen of Brookhaven to him, ye said Smith, as by their s^d deeds, relacon being thereunto had, may more fully appear," and which patent confirmed and ratified Smith's title. The plaintiffs also produced in evidence the town records of Brookhaven, containing an entry showing that, at a meeting of the trustees, freeholders and commonalty of the town on the 27th of November, 1693, the patent to Smith was read and approved, and a further entry that on election day, in May, 1694, Col. Smith caused the patent to be publicly read before the freeholders of this town, and that it was voted to approve the same. These facts and admissions tend to show that the town had conveyed to Smith the title to the land under water in Setauket harbor, adjoining the premises described in the Brewster deed. Both Smith's patent and Brewster's deed make the boundary between the respective premises a line running from Smith's gate to Floyd's point. The same line is recognized in a deed from Selah Strong, the ancestor of defendants, to Abram Woodhull, dated April 4, 1785, as bounding the premises formerly belonging to Smith.

It now appears, therefore, that the town, as early as 1693, had conveyed most of the land under water in the harbor of Setauket to a private person. What remained was the small part included between the western boundary of the Smith patent, and the shore at high-water mark, and this was the part conveyed by Brewster to Seaton in 1768. It does not seem to be an unreasonable presumption, under the circumstances, that the title of Brewster also originated in a grant from the town.

Upon the case as now presented we are of the opinion that the plaintiffs made out a *prima facie* title to the *locus* upon which the bridge was erected, and that the court erred in dismissing the complaint.

The judgment should, therefore, be reversed and a new trial granted.

All concur.

Judgment reversed.