Hugh McRoberts, Respondent, v. Henry S. Bergman et al., Appellants.

132    73
143    528

While in an action of ejectment, plaintiff must recover upon the strength of his own title, not upon the weakness of that of defendant, where the former shows a title, better in respect of his right of possession, he is entitled to recover.

In an action of ejectment to recover possession of a salt meadow, and the beach and shore in front thereof lying next the waters of a salt water bay, plaintiff produced in evidence a deed to J., given in 1756, which conveyed two parcels of land; following the description of the last parcel was the following: "And also a little lot of salt meadow * * * to said lot belonging or appertaining." J. died in 1780, and whatever interest he had became vested, under his will, in his son S. S. died in 1845, and whatever title he had vested under his will in his son J. S., who in 1847 executed a deed to W., purporting to convey a piece of land, commonly called "the little salt meadow," bounded by the "sand beach or shore," and also "all the right, title and interest" of the grantor, "which was owned and enjoyed by" S. in his life-time, "in and to the beach shore and waters of the bay in front of the said described premises." The two parcels of land described in the deed to J. were occupied by S. until his death as part of his homestead farm, and his title thereto was not disputed. The salt meadow and beach in question lie near to this farm and were occupied by him in connection with it, his possession was as complete as the character of the land and the uses to which he devoted it rendered practicable, and his ownership was unchallenged. On the trial defendants admitted plaintiff's title to the salt meadow and amended their answer so as simply to deny title to the sand beach. Held, that the identity of the salt meadow in question with that described in the deed of 1756 was sufficiently established.

It appeared that the beach and meadow together formed but a single lot, with no artificial boundary between them, bounded by the sea in front and by ditches on each side, and that during living memory the sea had encroached on the land so that the sea is now where the beach once was, and the present beach was once part of the salt meadow. Held, that the presumption was that S. died seized of the locus in quo, deriving title under the deed to his father; that W. acquired a prima facie title under his deed from J. S., which afforded sufficient presumptive evidence of subsequent possession by the grantee, and those holding under him, in the absence of actual proof of a twenty years' adverse possession by a stranger to that title.

The deed of 1756, by its recitals, purported to deduce title from colonial grants made in the previous century. Held, that while the recitals were

not evidence of the facts recited against strangers to this title they were evidence that the grantors and grantee made a claim of title, and so characterized J.'s original entry.

(Argued January 29, 1892; decided March 8, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 13, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

The action was ejectment for the recovery of premises in the town of Southfield, on the southerly side of Staten Island, described in the complaint, alleged to contain $8\frac{83}{100}$ acres, consisting of a salt meadow and the beach and shore in front thereof, lying next the waters of the lower bay of New York.

The answer contained a general denial, alleged title in the defendants by adverse possession, and that the plaintiff's alleged title was void for champerty. At the close of the testimony the defendants amended their answer by leave of the court and abandoned claim to the salt meadow, and limited their defense to the sand beach or shore in front thereof, being a strip of land about 940 feet in length along high-water mark, and about 240 feet in width. Upon this strip the defendant, Henry Bergman, had made valuable improvements at an expense of about $11,500.

Further facts are stated in the opinion.

*E. Louis Lowe* for appellants. Plaintiff must recover upon the strength of his own title and not upon the weakness of his adversaries. (*Roberts* v. *Baumgarten*, 110 N. Y. 380.) Plaintiff failed to prove a title. (*Wheeler* v. *Spinola*, 54 N. Y. 377; *Bliss* v. *Johnson*, 94 id. 235; *Tracy* v. *N. & W. R. Co.*, 39 Conn. 382; *Miller* v. *L. I. R. R. Co.*, 71 N. Y. 380; *Price* v. *Brown*, 101 id. 669.) The charge of the court was erroneous. (Code Civ. Pro. § 378; Laws of 1878, chap. 190; Laws of 1886, chap. 187; *Roe* v. *Strong*, 119 N. Y. 316.) It was error for the court to charge that all the deeds from

Keteltas to White and from the Whites to the plaintiff, by reason of the word "beach" therein, purported on their face to convey all the land to high-water mark, including the premises in controversy. (*Trustees, etc.,* v. *Kirk,* 68 N. Y. 457, 463; *People* v. *Jones,* 112 id. 597, 605.) Assuming, as defendants contend, that the deeds from Keteltas and the Whites conveyed no part of the premises in controversy, and that they gave no color of title thereto, then and in that case it was incumbent upon the plaintiff — if the taking of sand be evidence of possession — to show where upon the beach he took sand for twenty years continuously, and where and in what place he acquired actual possession by such taking. A party without color of title can only recover what he has had actual possession of, and no more. (*Gardner* v. *Hart,* 1 N. Y. 528; *Pope* v. *Hanmer,* 74 id. 240; *Thompson* v. *Bur hans,* 79 id. 93; 61 id. 52; 4 R. S. 2453, § 147.) The defenders were not mere intruders. (*Thompson* v. *Burhans,* 61 N. Y. 52.) The plaintiff is estopped from asserting title or claiming the premises in controversy as against the defendant Bergman. (*Brown* v. *Bowen,* 30 N. Y. 519; 3 Washb. on Real Prop. 73.) Defendants' exceptions were well taken. (2 Devlin on Deeds, § 1020; *Kellogg* v. *Kellogg,* 6 Barb. 116; *Bradt* v. *Church,* 39 Hun, 262.)

*Wm. M. Mullen* for respondent. The plaintiff's possession from the year 1862 to the year 1875, under the lease from White, who claimed title to the premises in question through the deed from John S. Keteltas as executor of Stephen Keteltas to him, is to be deemed the possession of his said landlord or lessor. (Code Civ. Pro. § 373; *Church* v. *Schoonmacher,* 115 N. Y. 570; *Becker* v. *Church,* Id. 562; *Bradt* v. *Church,* 110 id. 537; *Jackson* v. *Harrison,* 7 Cow. 323; *Whiting* v. *Edmunds,* 94 N. Y. 309; *Sands* v. *Hughes,* 53 id. 293.) The acts of ownership exercised by the plaintiff over the premises in question was sufficient to constitute an adverse possession by the plaintiff to the lands in question. (Code Civ. Pro. §§ 370, 372; *LeFrombois* v. *Smith,* 8 Cow. 589;

*Corning* v. *T. I. & N. Foundry*, 44 N. Y. 577; *Monroe* v. *Merchant*, 28 id. 9; *Mayor, etc.*, v. *Carleton*, 113 id. 285; *Town of East Hampton* v. *Kirk*, 84 id. 215.) In order to constitute a substantial inclosure under the meaning of the statute, it is not necessary that a fence should be erected standing above the ground, but that any other obstacle or barrier which is interposed or constructed around the land sufficient to keep out cattle or other domestic animals, constitutes an inclosure within the meaning of the statutes. (Wait's Act. & Def. 329; *Town of East Hampton* v. *Kirk*, 84 N. Y. 215; *Jackson* v. *Schoonmacher*, 2 Johns. 229; *Jackson* v. *Halstead*, 5 Cow. 216; *Becker* v. *Von Volkenburg*, 29 Barb. 319.) The defendants, by their amendment to the answer, having relinquished all claim to meadow land, and rested their claim solely upon that portion of the property in question, which consisted of sand beach or shore, were not entitled to any part of the premises in question as they existed at the time of the commencement of this action. (*Town of East Hampton* v. *Kirk*, 84 N. Y. 215; *In re H. & S. R. Co.*, 5 M. & W. 327; 2 Black. Comm. 262; Code Civ. Pro. §§ 370, 373.) The rule that the declarations of a person in possession of land as to its title are admissible evidence against him and all persons claiming under him is well settled. (*Dickinson* v. *Barton*, 4 Johns. 230; 1 id. 343; 1 Esp. 458; 2 T. R. 53; *Jackson* v. *Bond*, 4 Johns. 230; *Pitts* v. *Wilder*, 1 N. Y. 525; *Abeal* v. *Von Gilder*, 36 id. 513; *Vrooman* v. *King*, Id. 477; *Norton* v. *Pettibone*, 7 Conn. 719; *Keaton* v. *Dimmock*, 46 Barb. 158; *Varick* v. *Briggs*, 6 Paige, 323; 22 Wend. 543; *Featherly* v. *Waggoner*, 11 id. 599; *Smith* v. *Wait*, 4 Barb. 28.) If the defendant Burke had any interest in the premises other than she derived from or through the Stilwell and Tucker deed, it was incumbent upon her to show that interest. (*Bedell* v. *Shaw*, 59 N. Y. 46; *Pierce* v. *More*, 114 id. 256; *Bliss* v. *Johnson*, 94 id. 235.) The deed from Stilwell and Tucker to Burke was absolutely void on the ground of champerty, the the plaintiff, McRoberts, being in possession of the premises in question as a lessee of White at the time the deed was delivered.

(*Becker* v. *Church*, 115 N. Y. 562; *Church* v. *Schoonmacher*, 115 id. 570; *Whiting* v. *Edmunds*, 94 id. 309; *Sands* v. *Hughes*, 55 id. 293; *Dawley* v. *Brown*, 79 id. 390; *Fish* v. *Fish*, 39 Barb. 513; *Ellsworth* v. *Northrup*, 106 N. Y. 172.) The existence of a fence, presenting a question of fact, was fairly submitted to the jury by the judge in his charge. This question of fact will not be disturbed upon this appeal. (*Cross* v. *Mowers*, 16 N. Y. S. R. 425; *Cheney* v. *N. Y. C. & H. R. R. R. Co.*, 16 Hun, 415; *Seneca Nation* v. *Hugaboom*, 30 N. Y. S. R. 586.) The deed from Stilwell and Tucker to the defendant Burke being void for champerty, her possession of these lands is not adverse to the title of the plaintiff. (*Dougherty* v. *Maxwell*, 24 J. & S. 76; *Price* v. *Brown*, 101 N. Y. 669.) Defendants' exceptions to the admission of evidence was not well taken. (*Sheldon* v. *Wood*, 2 Bosw. 269; *Bergman* v. *Jones*, 94 N. Y. 51; *People* v. *Beach*, 87 id. 508; *Turner* v. *City of Newburgh*, 109 id. 301; *Ward* v. *Kilpatrick*, 85 id. 413; *N. Y. S. Co.* v. *Mayor, etc.*, 109 id. 621; *Carr* v. *Ilch*, 12 N. Y. S. R. 569; *Denise* v. *Denise*, 110 N. Y. 562; *Daniel* v. *Patterson*, 3 id. 47; *Durgen* v. *Ireland*, 14 id. 322; *R. Seminary* v. *McDonald*, 34 id. 369; 20 Johns. 347; 5 Barb. 398; *Potter* v. *Ellice*, 48 N. Y. 321; *Schile* v. *Brokhaus*, 80 id. 614; *Fills* v. *Jones*, 2 Abb. Ct. App. Dec. 121; *Wallis* v. *Randall*, 81 N. Y. 164; *Trustees, etc.*, v. *Kirk*, 84 N. Y. 215; *Corning* v. *T. I. & N. Factory*, 44 id. 577; *Wheeler* v. *Spinola*, 54 id. 375; *Thomson* v. *Burhans*, 61 id. 52; 79 id. 100; *Barnes* v. *Light*, 116 id. 34; *Roe* v. *Strong*, 29 N. Y. S. R. 506; *Machin* v. *Geortner*, 14 Wend. 239; *Jackson* v. *Woodruff*, 1 Cow. 276; *Munroe* v. *Merchant*, 28 N. Y. 9, 44; *Van Wyck* v. *McIntosh*, 14 id. 439; *White* v. *Madison*, 26 id. 117; *Stowell* v. *Hazelett*, 66 id. 635; *Cushman* v. *U. S. L. Ins. Co.*, 70 id. 72; *Tooley* v. *Bacon*, Id. 34; *Hoffman* v. *Connor*, 76 id. 121; Code Civ. Pro. § 370; *Argotsinger* v. *Vines*, 82 N. Y. 398; *Sherman* v. *Kane*, 86 id. 57; *Swellenham* v. *Leary*, 18 Hun, 284; *Miller* v. *S. & R. R. Co.*, 71 N. Y. 380; *Ensign* v. *McKinney*, 12 Abb. [N. C.] 463; *Enders* v. *Sternberg*, 1 Keyes, 264; *McKinnon* v. *Bliss*, 21

N. Y. 206; *McKinnon* v. *Barnes*, 66 Barb. 91; *Hooper* v. *A. W. W. Co.*, 37 Hun, 568; *Hardenbrook* v. *Laken*, 47 N. Y. 109; *Scofield* v. *McClellan*, 16 Wall. 331; *Wallace* v. *Berdell*, 101 N. Y. 13.) The declarations of the defendant Sarah A. Burke are competent evidence against her, and are binding upon her and all those claiming under her. (*Dickinson* v. *Barton*, 4 Johns. 230; 1 id. 343; 1 Esp. 458; 2 T. R. 53; *Chadwick* v. *Fonner*, 69 N. Y. 404; *Jackson* v. *Bond*, 4 Johns. 230; *Pitts* v. *Wilder*, 1 N. Y. 525; *Embury* v. *Connor*, 3 id. 512; *Pitts* v. *Wilder*, 1 id. 525; *Naughton* v. *Pettibone*, 7 Conn. 319.) The bounding of premises, situated on navigable waters, by the "beach or shore," or "along the shore," carries the title to high-water mark, unless there is something in the conveyance which indicates a contrary intention, and the words "beach or shore," when used in conveyancing, refer to the "strand" or beach between high and low water. (*Roe* v. *Strong*, 29 N. Y. S. R. 504; *People ex rel* v. *Jones*, 112 N. Y. 597, 605; *Trustees, etc.*, v. *Kirk*, 68 id. 459.) The charge in relation to the plaintiff's adverse possession was correct. (*Roe* v. *Strong*, 107 N. Y. 350.)

Landon, J. The defendants claimed title by adverse possession, but rested their defense mainly upon the proposition that the plaintiff did not show title in himself, first, because he did not have a paper title covering the sand beach; second, because his grantors were not shown to have been in possession of the premises as owners; third, because the plaintiff's possession, added to that of his grantors, was insufficient either in time or character to establish title by adverse possession, whether founded upon a written instrument or otherwise; fourth, that this alleged paper title was void for champerty.

There was some evdence tending to support the verdict, even if it should be held that under the charge of the learned trial judge it was solely dependent upon a title acquired by the adverse possession of the plaintiff and his grantors not founded upon a written instrument. The charge in this

respect was favorable to the defendants; no valid exception was taken to it; the General Term has affirmed the judgment; the trial court was not asked to hold as a matter of law that the evidence was insufficient to justify a verdict upon that ground, but was simply asked to nonsuit the plaintiff upon several grounds, a motion which was properly denied because the plaintiff might recover upon other grounds. No question of fact upon this point is open to our review, and although the evidence in support of such a title seems to us to be meager, we cannot reverse upon that ground.

The defense of champerty was plainly destitute of merit. The charge of the trial court was equally favorable to the defendants, and no exception is presented upon this branch of the case which avails to reverse the judgment.

In his main charge the learned trial judge submitted the case to the jury upon the sufficiency of the evidence to establish title in the plaintiff by adverse possession exclusive of a claim of title founded upon a written instrument, and also upon the sufficiency of the evidence to sustain the defense of the alleged invalidity of the plaintiff's paper title because of champerty.

The plaintiff claimed title under deeds of the *locus in quo* given him by the widow and heirs of William H. White in 1875. He gave evidence, which we shall presently consider, tending to show that his grantors had title. The defendants relied upon a deed given to the defendant Sarah A. Burke by Ann Stillwell and Joseph Tucker in 1873, purporting to convey a portion of the premises described in the complaint, and they attempted to prove that at the date of the deed to plaintiff she was in possession of the premises, claiming and holding them adversely under the deed to her. This was the basis of the defense of champerty. The evidence disclosed its fictitious character; it was, as already stated, disallowed by the jury; we refer to it to show that notwithstanding the limitations of the main charge of the learned judge, the fact that the plaintiff's claim of title was founded upon a written instrument, and that the defense was directed to the impeachment of title

thus founded, was present to the minds of the jury throughout the trial. Two of the defendants' requests to charge were addressed to the effect of the description contained in the plaintiff's deed, and a third request was addressed to its champertous character.

The court refused to charge as requested by the defendants' counsel that the description contained in the deed to the plaintiff did not include the sandy flat above high-water mark, that is, the *locus in quo.*

The court, at the request of plaintiff's counsel, then charged that said description did not include the land to high-water mark. The defendants' counsel excepted to both refusal and charge. The defendants' counsel requested the court to charge that the plaintiff under his deeds is not entitled to recover $6\frac{83}{100}$ acres, but only 5 acres, 1 rood and 6 perches. This the court refused, and defendants' counsel excepted. Since the court had in effect instructed the jury that they could not find a verdict for the plaintiff upon his alleged paper title, if the defendants then by their requests induced the court to give it a construction and thus lead the jury to suppose that they also could consider it, this implied change in the instruction of the court would be of the defendants' procurement, and not a ground of reversal of the judgment against them. Nevertheless, the General Term, as its opinion states, held that the plaintiff proved his paper title to be good. It may be that the jury placed their verdict upon that ground. The counsel for the respective parties invite us to examine the question. We, therefore, have examined the evidence adduced in support of it. The result is the conclusion that the plaintiff did prove a clear *prima facie* title to the *locus in quo,* that apart from the evidence bearing upon the defense of champerty, which the jury properly disposed of, that title was in no way impeached.

In 1875, the plaintiff obtained deeds of the *locus in quo* from the widow and heirs of William H. White. John S. Keteltas conveyed the premises to White in 1847. John S. Keteltas, under the will of his father, Stephen Keteltas, who died in 1845, obtained whatever title Stephen had in his life-

time. Stephen was the son of Captain John Keteltas, who died in 1780, and whatever title Captain John had in his lifetime became vested upon his death in Stephen.

The plaintiff read in evidence a deed given in 1756 to Captain John Keteltas by the executors of the will of Jacob Berge, of two parcels of land, containing respectively 81 acres and 40 acres; following the description of the 40 acres, the description continued: " And also a little lot of salt meadow at Eagle's Nest point on the west side of Peter Nowll's land, to the said lot of land belonging or appertaining."

The deed of 1847 from John S. Keteltas to William H. White purports to convey a piece of land commonly called " the little salt meadow," in the town of Southfield, " Bounded northeasterly by salt meadow of Peter Jacobson; northwesterly by the water course known as New creek; southwesterly by salt meadow land of J. L. Flake; southeasterly by sand beach or shore, containing five acres, one rood and six perches as surveyed in October, 1846, by C. H. Blood.  And also all the right, title and interest of the party of the first part which he now has or ever had, and which was owned and enjoyed by Stephen Keteltas, deceased, during his life-time, of, in and to the beach shore and waters of the bay in front of the said described premises hereby to be conveyed."

Stephen Keteltas died in 1845 seized of the 81 and 40 acres described in the deed of 1756 to his father.  They composed part of the homestead farm upon which he always resided. The salt meadow and beach described in the complaint and in the deed of 1847 to White, lie near to this farm and were used in connection with it.

The salt meadow mentioned in the deed of 1756 is identified with the *locus in quo*, if the words of this description, " to the said lot of land belonging or appertaining," refer to the lot of 40 acres immediately theretofore described in the same deed, as they probably do.  But the possession of Stephen Keteltas of the salt meadow and beach in front, as well as of the adjacent 81 and 40 acres, dates from the earliest memory of witnesses, was as complete as the character of the land, and the

uses to which he chose to devote it rendered practicable, and was of unchallenged ownership. His title to the 81 and 40 acres has never been questioned; upon the trial the defendants disclaimed all denial of the plaintiff's title to the salt meadow, and only insisted upon their denial as to the sand beach. At the close of the testimony, they amended their answer accordingly. The identification of the salt meadow described in the deed of 1847 with that described in the deed of 1756 is thus partly conceded, is substantially established, and is the more conclusive since there is no evidence tending to show the practical location of any other salt meadow as answering the calls of the earlier deed. The evidence shows that Stephen Keteltas had possession of both beach and meadow.

Together they formed a single lot, bounded by the sea in front, by a creek in the rear, and by a ditch on each side about three feet in depth. Between the meadow and the beach there was no artificial boundary. The sea during living memory has been encroaching upon the land and witnesses testified that where the beach once was the sea now is, and that what was once part of the salt meadow is now the sand beach. The boundary ditches along the meadow land were open and well defined. They extended in a straight line across the beach to the sea, but on the beach the shifting sand usually filled them, and Stephen Keteltas occasionally reopened them. Such ditches are the customary boundaries of such lands upon the island. Stephen Keteltas cut the grass upon the salt meadow every year, and used the beach for fishing both for food fish, for the market, and for fertilizing purposes. He had stakes and poles driven there and out into the water to support his fish nets. Occasionally trespassers came upon the beach for sand and he forbade their taking it and caused them to go elsewhere. Within the case of *Roe* v. *Strong* (119 N. Y. 316), these acts of ownership must, under the circumstances, be referred to the exercise of the right purporting to be granted by the deed of 1756, and not to any usurpation. The presumption is that these acts were acts of possession under that deed, and in the absence of any opposing evidence, that Stephen

Keteltas' possession was the continuation of the like possession of his father under the same title from its date in 1756.  (*Jackson ex dem. v. McCall*, 10 Johns. 377.)

There is no evidence tending to rebut this presumption. The defendants insist that the deed of 1847 to White does in terms convey the salt meadow, but does not in terms convey the beach, but only all the right, title and interest of the grantor John S. Keteltas and such as his father had therein.

A grant of a salt meadow separated from the sea only by a beach formed by the sand thrown by the waves upon the meadow itself, ought not, in the absence of evidence of the public reservation or of a hostile grant to another, to be construed, to use the words of the opinion in the case cited, " to cut him (the grantee) off from access to the water over his own land."

The word beach denotes land washed by the sea, and in the absence of qualifying words, a boundary by the ocean beach extends to high-water mark.  (*Trustees of East Hampton v. Kirk*, 68 N. Y. 459 ; *People ex rel. Burnham v. Jones*, 112 id. 605.)

The practical location of the lot within the boundary ditches extending to high-water mark is not inconsistent with the language of the description of the salt meadow in the deed of 1756.  The usage of parties under an ancient grant aids in construing its obscure terms.  (*Trustees of Brookhaven v. Strong*, 60 N. Y. 56–72.)  The additional words of the deed of 1847, " of all the right title of the party of the first part in and to the shore and water of the bay in front of said described premises," are satisfied by referring them to whatever rights the grantor intended to convey below high-water mark.

The presumption is that when Stephen Keteltas died in 1845, he was seized of the *locus in quo* as owner deriving title under the deed given to his father in 1756.  His possession was peaceable, exclusive, notorious and unchallenged; it ascended beyond present memory, and was referable to the deed of 1756.  It is not shown to be referable to any other

source.   He had at least *prima facie* title.   (*Mayor of N. Y. v. Carleton*, 113 N. Y. 284.)   His son John S. Keteltas, succeeding to his title and possession, conveyed to William H. White in 1847.   White thus acquired a *prima facie* title. (*Stevens* v. *Hauser*, 39 N. Y. 302.)   Such a deed suffices if not overcome.   It affords sufficient presumptive evidence of the subsequent possession of the grantee and those holding under or through him, unless actual proof of an adverse possession for twenty years be made.   (Code C. P. § 308 ; *Thompson* v. *Burhans*, 79 N. Y. 99 ; *Bliss* v. *Johnson*, 94 id. 235.) No such proof was made.

The plaintiff must recover upon the strength of his own title, not upon the weakness of that of the defendant.   But he measures his title with that of the defendant, and if it is better in respect of his right of possession, he prevails because of its sufficient strength.   (*Dunham* v. *Townshend*, 118 N. Y. 281 ; *Carleton* v. *Darcy*, 90 id. 566 ; *Thompson* v. *Burhans, supra; Clute* v. *Voris*, 31 Barb. 511 ; *Jackson ex dem.* v. *Hubble*, 1 Cow. 613 ; *Onderdonk* v. *Lord*, Hill & Denio, 129 ; *Whitney* v. *Wright*, 15 Wend. 171 ; *Hunter* v. *Starin*, 26 Hun, 529.)

Upon the facts already stated the plaintiff had the better title in respect of the right of possession.

The plaintiff himself, as tenant under White from 1863 to 1875, and as owner from 1875 to 1885, took sand from the beach and sold it to the extent of about 250 sloop loads each year.   The business was continuous throughout the year.·   He also disposed of the grass upon the salt meadow, either cutting it himself or permitting others to do so.   This possession was open, notorious and, except as improperly resisted by the defendant Sarah A. Burke, was exclusive.   Thus there was no abandonment for twenty years of the possession and dominion of the premises under the title presumed to have originated in 1756, but it was practically continuous during living memory. It is proper to add that the deed of 1756 by its recitals purports to deduce title from colonial grants made in the previous century.   While these recitals are not evidence against strangers to this title of the facts recited (*Hardenburgh* v.

*Lakin,* 47 N. Y. 109), they are evidence that the grantors and grantee in the deed of 1756 made a claim of title, and they thus characterize Captain Keteltas' original entry.

There are no other exceptions which require discussion.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed. _____ _____