(14 Misc. Rep. 372.)

### MISSION OF IMMACULATE VIRGIN v. CRONIN.

(Supreme Court, Special Term, Queens County.    November, 1895.)

1. EJECTMENT—POSSESSION OF LOCUS IN QUO.
    One who goes on a small parcel of land (1,300 feet long by 900 feet wide) which cannot be fenced because of the shifting sand, and places monuments to mark the boundaries, and brings lumber on it to build, has such possession as will sustain ejectment.

2. SAME—TITLE TO MAINTAIN.
    Possession under a claim of ownership is enough to maintain ejectment against one claiming merely a right of possession under a later entry.

Action by the Mission of the Immaculate Virgin against Michael Cronin to recover possession of land.    Judgment for plaintiff.

Edward Swanton and John J. Macklin, for plaintiff.
Abner C. Thomas, for defendant.

GAYNOR, J.    The complaint designates the land in dispute as lots 4 and 5 on the original map of beach lots at Far Rockaway, in Queens county.    The survey put in evidence shows it to be a strip of beach land along the Atlantic Ocean, about 1,300 feet front and 900 feet deep.    The evidence shows it to be, in the main, covered with small cedars.    The plaintiff put in evidence a conveyance of it by Benjamin C. Lockwood, Jr., and Elizabeth Carroll, his mother (her second husband also joining), to Charles Donahue, dated January 28, 1869; also a conveyance of it by Donahue to the plaintiff, dated January 6, 1881.    This is all of the plaintiff's evidence of paper title, except the will of Benjamin Cornwell, dated and probated in 1821.    He was the great grandfather of Benjamin C. Lockwood, Donahue's principal grantor, who claimed the land through the said will, as his deed recites.    Such recital is evidence of the claim of title under which he exercised dominion over the property.    McRoberts v. Bergman, 132 N. Y. 73, 30 N. E. 261.    It was shown by oral evidence that the grandfather of the said principal grantor to Donahue had the land in question bounded by stakes, claimed to own it, and went upon it continuously and frequently, and cut and took off cedars for posts and fuel.    His son also kept it marked by stakes, and used it in the same way.    It was generally known and recognized as his, being called, after his name, "Ben Lockwood's Cedars."    Charles McNeil, under whom the defendant pleads that he claims, always so called it.    Ben Lockwood's son, the present Benjamin C. Lockwood, kept and used it in the same way until he conveyed it to Donahue.    Hundreds of cedars were taken off by him every year, and every one else who attempted to take any was stopped by him.    He lived in the township, about two miles away, as did his ancestors; and the evidence will sustain a finding that they continually used the land in the way stated, and kept watch and guard over it, and controlled it, to the exclusion of all others, and were generally recognized as the owners. When Donahue took his conveyance, in 1869, he also had it marked about by stakes, and cut and took away cedars from it frequently every year, and went upon it frequently, and kept watch of it.    He also lived in the vicinity.    The land could not be fenced, on account of the blowing and shifting of the sands.    It was kept and used in the only way it could be kept and used.    When the plaintiff took its conveyance, in 1881, it entered, and put stone monuments around the property, and brought lumber upon it to build.    Afterwards the defendant entered.    The aforesaid care, use, and claim of ownership of the property had been continuous for 60 years, under the proof, and by fair inference much longer, before the entry of the defendant. The plaintiff rested upon the foregoing evidence.

The defendant answered that Charles McNeil is the owner of an undivided interest in the land in dispute, and that the defendant peaceably and quietly entered into possession, and holds as the tenant of said McNeil.    He put in evidence the record of a partition by suit of a large tract of beach in 1809, in which the land in dispute was set off as the said lots 4 and 5 to Thomas Bannister, in the right of Rachel, his wife.    But this record has no bearing in the case, as the defendant did not connect himself with the Bannister title.    In fact, he made no attempt to do so, though the trial was adjourned to the next day to enable him to.  Upon the last trial it was stipulated that "the partition suit is the common source of title," and under the authorities that stipulation still subsists, though objected to by plaintiff.    But it is of no effect on this trial, because neither side connected itself with the said partition.    The record of another partition action, commenced after this action, was put in evidence by the defendant, but neither did he connect himself with it.    The sole question, therefore, is whether the plaintiff has made out sufficient title to maintain an action of ejectment.    If the possession necessary to sustain an action of ejectment be such as would, if continued long enough, make a title by adverse possession, it may be that the plaintiff cannot recover. But I have never understood such a strict possession to be necessary, and it has been held not to be (Hunter v. Starin, 26 Hun, 529), while I do not think there is any case in this state directly to the contrary, and this question was not in the case in the former disposition of it. The facts proved in the cases of Miller v. Railroad Co., 71 N. Y. 380; Thompson v. Burhans, 79 N. Y. 93; and Price v. Brown, 101 N. Y. 669, 5 N. E. 434,—fall far short of the acts of possession shown in this case. The case of a vast tract of uncleared land is very different from this case. Here the fact of possession and control is easy to make out, owing to the size of the plot.    One person could stand in the middle of it, and watch and guard it.    If some one having no title should forcibly eject him, would he not, by virtue of his prior possession, be able to maintain ejectment to regain his possession?    If one having no title go upon an unfenced city lot, and bring lumber upon it to build, and another, who has no title, either actually force him off, or take unopposed possession during the night or while he is absent at dinner, it seems to me that as against him the second occupant is an intruder, and that he may maintain an action of ejectment against him, although his prior possession was not such as would have ripened into an adverse title.    It seems to me that the actual going upon a piece of land the size of this, and like this, in that it could not be fenced, and putting stone monuments around it, and bringing lumber upon it to build, is, in itself, the taking of full possession of it.    Nor should the question here involved be confounded with the question of the presumption of a grant.    That presumption arises only in the case of an adverse possession long enough continued to make a title, unless it may arise, in an exceptional case (Roe v. Strong, 119 N. Y., at page 322, 23 N. E. 743), where a strict possession is impossible.    In an action of ejectment where a paper title is not produced, and a title by adverse possession is not made out, the question of such presumption does not

arise. The plaintiff may concede there was no grant, for prior possession under claim of ownership is enough to maintain eject-ment against one claiming right of possession only under a later possession. Day v. Alverson, 9 Wend. 223; Mayor, etc., of New York v. Carleton, 113 N. Y. 284, 21 N. E. 55; Newell, Eject. c. 13, § 14.

This case was decided in the court of appeals, after the first trial, solely upon the propositions (1) that both sides claimed title from a common source, viz. the partition of 1809; (2) that the defendant was in possession "as lessee" of a descendant of the Bannisters, to whom the land in dispute was allotted in such partition; (3) that, therefore, the plaintiff, having no paper title, had to make out title by adverse possession, but that its proof was insufficient for that purpose, or to raise a presumption of a grant to the plaintiff or its predecessors. 38 N. E. 964. No such case as this is now pre-sented. The claim of the defendant that he is connected with the Bannister title, as lessee, was not made out on the present trial. The defendant was not, therefore, put to any proof or claim of title by adverse possession, or to the presumption of a grant, which is the same thing. The plaintiff now makes no claim of title by ad-verse possession, or by presumption of a grant, if these two things may be separated. That they cannot be is plainly stated by the court of appeals in disposing of this case when it was before it. Its opinion says:

"If, upon such facts as exist here, a grant could be presumed, it would be easy for a claimant to land to get around the careful provisions of law as to adverse possession. If he failed to show facts sufficient for adverse possession, he could yet use the same inadequate facts to raise a presumption of a grant."

The decision of the court of appeals proceeded upon the state-ment that the defendant was lessee under the Bannister title. That was acquiesced in, and accepted as the fact. That put the plaintiff to proof of a paper title, or else of title by adverse possession. The case now stands upon a finding of fact that the defendant is not connected with the Bannister title, but is an intruder, and claims un-der his possession alone. The question upon which the case is now decided was not before the court of appeals, or considered by it. Under the then acceptance as fact that the defendant was lessee under the Bannister title, the plaintiff claimed title by adverse pos-session, and failed. Under the present finding of fact that the de-fendant is an intruder, and claims under his naked possession only, the prior possession of the plaintiff enables it to prevail, regardless of whether there be an outstanding title. That defense is not open to an intruder. Jackson v. Harder, 4 Johns. 211; McRoberts v. Bergman, 132 N. Y. 73, 30 N. E. 261; Whitney v. Wright, 15 Wend. 172. A much stronger case of possession was made out in this case than in Roe v. Strong, 107 N. Y. 350, 14 N. E. 294; Id., 119 N. Y. 316, 23 N. E. 743. The allowing of a presumption of a grant in that case was upon the fact that the property was not capable of "a technical adverse possession," and that the plaintiff and his prede-cessors had exercised over it all the acts of ownership "which, con-sidering the nature and situation of the property, could be exer-

cised." The rule in respect of adverse possession could not have been contemplated for such property. I do°not see how that case can be fairly distinguished from this. There was no constructive possession there, any more than here, for the land there in dispute was not embraced in the deed of the upland to the plaintiff. Judgment for plaintiff.